## ARKANSAS STATE HIGHWAY COMM'N *v.* RICHARD M. MAHAN ET UX

5-5451                                        463 S. W. 2d 98

Opinion delivered February 15, 1971

*Thomas B. Keys* and *Billy Pease,* for appellant.

*Clark, Clark & Clark* and *Jones, Stratton & Jones,* for appellees.

GEORGE ROSE SMITH, Justice. This is an action by the highway commission to condemn two strips of land lying on opposite sides of a street in Damascus and totaling sixteen hundredths of an acre. The jury fixed the landowners' compensation at $12,900. In the view we take we need consider only two of the appellant's three points for reversal.

First, the landowners subpoenaed two witnesses, Gray and Sandlin, but did not use them at the trial. On the day before the case was tried an attorney of record for the highway department filed a motion, as attorney for Gray, asking that the subpoena directed to Gray be quashed. The motion asserted that Gray had not been tendered witness fees or mileage and that he had been subpoenaed by the same attorneys in two earlier condemnation cases without having been called to the witness stand in either case. The trial court's action in overruling the motion to quash the subpoena is now assigned as error.

We do not see how the highway commission is in a position to question the court's ruling. There is no indication in the abstracts and briefs that Gray has any connection with the highway department. Thus the appellant is in the attitude of complaining about the landowners' failure to tender witness fees and mileage to their own witness, an apparent stranger to the department. No doubt the department might properly object to being charged with costs incurred by the landowners in unnecessarily bringing in witnesses who were not used at the trial, but we find no basis for the preliminary motion to quash the subpoena.

Secondly, the appellant contends that the landowners' expert witness, Lloyd Pearce, should not have been permitted to testify about the reproduction cost, less depreciation, of a building that would be so close to the highway after the taking as to be no longer usable as a filling station.

That issue arose in this way: Pearce first explained to the jury that the three accepted methods of property valuation are comparable sales, capitalization of income, and reproduction cost less depreciation. Pearce had been unable to find any recent sales of comparable property in Damascus. Resorting to the other two methods of valuation, Pearce discussed the landowners' rental income from the property and arrived at a capitalized value which fixed the landowners' compensable damages at $12,900. Pearce then stated, in effect, that he had also used the cost-minus-depreciation method and had reached the same amount of compensable damages.

Pearce had qualified as a real estate appraiser, not as an engineer, architect, or builder. On cross examination he admitted that he was not a builder and did not know the cost of construction materials, such as building stone and concrete blocks, that would be required to reproduce the filling station at its site in Damascus. Instead, Pearce had estimated the reproduction cost of the building at $8.00 a square foot, less 50% depreciation. Pearce stated that "I keep up with building costs through the use of Marshall Field Cost, Dodge Construction Estimates, and Dow Building Cost Estimates, and also Beck Building Cost Estimates." He readily admitted that building costs vary from one locality to another.

We agree with the appellant's contention that its motion to strike Pearce's cost-less-depreciation testimony should have been granted. We recognize, of course, that a real estate dealer or appraiser who values property by the use of comparable sales need not know the cost of materials making up the building. Without that detailed information he is nevertheless ordinarily in a position to make a sound estimate of what the property as a whole would sell for in the open market.

Such information, however, does not qualify him as an expert in the matter of building costs. Nichols points out that evidence of reproduction costs, through admissible in most jurisdictions, should be received with caution, "because the reproduction cost of

a structure sets an absolute ceiling on the market price of that structure, a ceiling which may not be, and frequently is not, even approached in actual market negotiations. When this inherently inflationary attribute of reproduction cost evidence is considered in light of the misleading exactitude which such evidence almost invariably imparts to a jury unsophisticated in the niceties of economics, the justification for placing substantial safeguards upon its admission is apparent." Nichols, Eminent Domain, § 20.2 (3d ed., 1969).

One essential safeguard is that the witness qualify as an expert knowledgeable in the cost of building materials. "The qualifications of the building expert (usually an engineer, architect or builder or possibly all three) must be established. . . . Sometimes a *builder* [our italics] is hired to appraise the value of the structures by rule of thumb; so much a cubic foot multiplied by the number of cubic feet of building. Such an appraisal is worthless. It is not even approximately correct." Jahr, Eminent Domain Valuation and Procedure, § 157 (1957). Demonstrably more serious defects inhere in the testimony of the witness Pearce, not even a builder, who depended for his information upon printed services evidently not patterned upon construction costs in Damascus, Arkansas—a town of 255 people according to the 1970 census.

We cannot say that the testimony was not prejudicial. It would be natural for the jurors to be much impressed by the fact that, according to Pearce, both the available methods of evaluation came to the same figure, $12,900, to the penny. That the verdict was fixed at that exact amount leaves the prejudicial effect of the inadmissible proof not fairly open to doubt. '

Reversed.