ARKANSAS STATE HIGHWAY COMMISSION
*v.* Thomas Nelson SCOTT et ux

78-67                                                    571 S.W. 2d 607

Opinion delivered October 16, 1978
(Division I)

398

*Thomas B. Keys, John L. Munday, James N. Dowell,* and *Wayne Harris,* of *Warner & Smith,* for appellant.

*Hardin, Jesson & Dawson* and *Pearce & Robinson,* by: *H. Clay Robinson,* for appellees.

GEORGE HOWARD, JR., Justice. This is an appeal by the Arkansas State Highway Commission from a jury verdict and a judgment thereon, awarding appellees the sum of $80,000.00,[1] including interest at the rate of 10% per annum, for 0.38 of an acre of land condemned in an eminent domain action in connection with the widening of United States Highways 71 and 271. The land is located near Fort Smith, Sebastian County, Arkansas, and the improvements thereon

---

[1]The jury returned a verdict in the amount of $82,000.00, however, the land owner voluntarily entered a remittitur in the sum of $2,000.00.

consist of a grocery store and service station operation.

While appellants have asserted the following points for reversal:

1. The trial court erred in not striking the value testimony of the owner, Mr. Thomas Nelson Scott, and,

2. The trial court erred in not striking that portion of Mr. Calvin Moye's value testimony relating to the use of the modified income conversion approach; and,

3. The trial court erred in not striking that portion of Mr. Calvin Moye's value testimony relating to the use of the lease annuity approach; and,

4. There is no substantial evidence to support the verdict of the jury; and,

5. The trial court erred in entering a judgment that was contrary to the express stipualtions of the parties and in addition provided for an interest rate that is expressly contrary to Arkansas Law;

appellant's basic contention is that there is no substantial evidence to support the award of the jury and that the trial court erred in allowing an interest rate in excess of 6%.

We have concluded that there is substantial evidence to support the jury's verdict and, accordingly, we affirm the award. However, we are persuaded that the trial court committed reversible error in entering a judgment providing for an interest rate of 10% instead of the statutory rate of 6% applicable in condemnation proceedings.

Appellee, Thomas Nelson Scott, testified that, in his opinion, the best use of the property in question was a convenience store and service station; that since 1941, the year that he acquired the property from his father, he and his wife had operated a service station only on this property until 1947, when an addition, consisting of concrete blocks involving an area 40 feet by 50 feet, was constructed for a retail gro-

cery store. Further, in 1953, the appellant added a variety room and a storage room. Appellee, Thomas Nelson Scott, had, according to the record before us, worked on a part time basis for his father, at the same location, for thirty-five years prior to his acquisition of the business.

It is clear from this record that the property is located near a junction where four main highways intersect or meet, namely, United States Highway 79 and State Highway 59, both located on the east side of the property, and United States Highway 271 and State Highway 253 are located on the west side. Across the street from appellee's property is the Smith Chevrolet-Cadillac agency and there are other businesses in close proximity of the property.

Appellee testified that in his opinion the land had a fair market value of $60,000.00; and that the improvements had a value of $60,000.00, aggregating a total market value of $120,000.00.

On cross-examination, appellee testified that he had never been engaged in the sale of real estate for a living, but had sold a few lots that he owned at one time; that in determining the value of the improvements on the property, as of the time of the taking, he valued the property at $15.00 per square foot and that this included the service station that was built in 1929.

Appellee testified on cross-examination as follows:

"Q. Now, you attributed to the value of the improvements as of October 1, 1974, a $15. a square foot figure. Mr. Scott, may I ask you where you determined that this was an appropriate figure?

A. Well, it is rather common knowledge that construction costs, many buildings are built by the square foot and it runs far more than that.

. . .

Q. Now does this $15. a square foot figure represent what you are telling the ladies and gentlemen of the Jury

would cost you to replace this building on October 1, 1974 in its same or similar form?

A. Yes.

. . .

Q. And although these comparable sales you have, one of $12,000.00 for half an acre, you have six and a half acres at $125,000.00 an acre which would be something less than $20,000.00 an acre; and two and a half acres for $85,000.00 which should be something over $30,-000.00 an acre. You are telling these ladies and gentlemen of the Jury that your .38 of an acre is worth $60,000.00?

A. It's in a far more enviable location as it has four highways where the others have two. Access means a whole lot."

Counsel for appellant made the following motion which was denied by the trial court:

"MR. HARRIS: Your Honor, at this time on behalf of the Arkansas Highway Commission, we would move to strike the testimony of Mr. Nelson Scott with reference to his opinion of the fair market value of the property taken as of October 1, 1974 upon the grounds that no fair and reasonable basis was offered as a foundation for his opinion and further, that Mr. Scott admitted that he had obtained his opinion of building costs from builders and was unable to tell us that it was as of the date of taking October 1, 1974 and at first suggested that these conversations had occurred shortly before he closed his business in 1976, and so therefore, since he computed the $60,000 figure from using the $15 per square foot building cost, that part of his testimony is clearly unsupported by his testimony; and secondly, that by his own admissions only and by his own statements of comparable sales that were offered that there are none that exceed 50 percent of his $60,000 value of this land, and his opinion in that regard is clearly unsupported by the facts on which he himself on his

own testimony stated he used as a basis for his opinion of fair market value of the land."

In *Arkansas State Highway Commission* v. *Robert Kennedy, et ux,* 248 Ark. 301, 451 S.W. 2d 745, which we hold is dispositive of the issue here, we made the following comment:

". . . [W]e have reiterated the well established principle of law that a land owner's testimony is competent and admissible as to the value of his lands, regardless of his lack of knowledge of property values, if a satisfactory explanation is given for his conclusion."

Here, Mr. Scott's testimony about the fair market value of his property was based upon his intimate knowledge of his property which he had possessed for 34 years in his own right and had been in his family for a period of time, before his acquisition of the property, exceeding 35 years. We are persuaded that any question about Mr. Scott's testimony would not relate to its admissibility, but would go to the weight to be accorded it. This, indeed, was a matter for the jury to ponder during its deliberation.

In arguing that the trial court committed error in denying appellant's motion to strike the testimony of appellee's expert witness, Calvin Moye, appellant readily concedes that "the law is not wedded to any particular formula or method for determining fair farket value as the measure of just compensation. . . . It may be based upon comparable sales, reproduction costs (less depreciation), capitalization of net income or interaction of these determinants."

Appellee's expert witness testified that in arriving at his figure of $80,000.00 as the fair market value of appellee's property, at the time of the taking, the witness resorted to comparable sales, reproduction costs, less depreciation, and variations of capitalization of income, namely, modified income conversion method, and lease annuity approach.[2]

---

[2]The witness offered testimony as to the cost of converting the improvements on the property to a modern, functional and attractive building adapted for a convenience store, which was regarded as the highest and best use for the property; the witness estimated the gross income from the operation based upon the information obtained from similar convenience stores in

Appellant voiced the following objection which was overruled by the trial court:

"MR. HARRIS: Your Honor, I'm going to have to, for the record at least, object to this because it appears to me that this appraisal is not based upon the condition of the improvement and the type of improvement as located on the Scott property as of October 1, 1974, and although I don't profess to be an eminent domain expert, it seems like to me that we are giving an opinion based upon some hypothetical type of property not involved in this case."

However, appellant now asserts the following objections to this testimony: (1) There was no income being produced, rental or otherwise, at the time of the condemnation; that the business conducted was presumably producing profits, but such evidence is not admissible as a basis for determining market value. Therefore, the modified income conversion method involves the conversion of property not of the income flow; and (2) that on the basis of converting the property to an unspecified hypothetical building, the costs of which are more speculative than the method of determining cost (less depreciation) of an existing building, the estimates of the witness were not proper and fall within the exclusion covered in *Arkansas State Highway Commission* v. *Mahan,* 249 Ark. 1022, 463 S.W. 2d 98, as the witness "had not qualified as an engineer, architect or builder."

We are persuaded that appellant is precluded from asserting these specific objections since they are raised essentially for the first time on appeal. It is well settled that an objection which does not specify the grounds of an objection to

---

the area; an operating schedule for the income flow from the converted property resulted in an anticipated net estimate by deducting anticipated expenses. The witness then capitalized the net income over a fifteen year period using an overall rate which included the recapture of the depreciation of the building and the rate of return necessary to cover the economic rent. Thus, the witness was able to determine a value for the property from which he deducted the cost of conversion.

Under the lease annuity approach, the witness determined economic rent recoverable for the property by comparison with the actual lease arrangements for similar property.

the testimony offered in order to afford the trial court an opportunity to rule on the objection is fatal. *Arkansas State Highway Commission v. Woody,* 248 Ark. 657, 453 S.W. 2d 45. Appellant's objection was not grounded on the use of an income approach where no income was being produced and that cost of converting the property and operational expenses is merely estimated rather than determined. Moreover, it is well established that a motion to strike all of a witness's testimony is correctly denied if part of the testimony is admissible. *Urban Renewal Agency of Harrison v. Hefley,* 237 Ark. 39, 371 S.W. 2d 141.

Finally, appellant asserts that the trial court erred in awarding interest on the judgment entered from the date of judgment, November 23, 1977, until paid at the rate of 10% per annum.

We are persuaded that Ark. Stat. Ann. § 76-536 (Repl. 1957), which deals specifically with the payment of interest on awards made for private property condemned for highway purposes, in relevant part, is controlling:

> "Immediately upon the making of the deposit . . . title to the said lands . . . shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein and said judgment shall include as a part of the just compensation awarded, interest at the rate of six per cent [6%] per annum on the amount finally awarded as the value of the property . . . "

Appellee argues that in 1975, the Arkansas General Assembly, recognizing the rise in commercial interest rates and the problem of inflation, amended Ark. Stat. Ann. § 29-124 (Repl. 1962) to increase the interest allowed on judgments rendered in our Courts from 6% to 10% and, accordingly, the trial court acted within its authority in allowing appellees 10% interest on their award. While appellees' argument may be characterized as noble, it is neither impressive nor compelling for from the plain meaning of the statutory provision relied upon by appellees, we are unable to perceive that the Legislature intended to supersede the 6% in-

terest rate contained in Ark. Stat. Ann. § 76-536 (Repl. 1957). Consequently, we reverse the trial court on this issue.

Relative to the question as to when the interest commences and ends on the original deposit of $27,300.00, the appellees concede, in their brief, that they erred in their calculation of the time of the taking and that the trial court's judgment is contrary to the expressed stipulation of the parties. In other words, both appellant and appellees stipulated that the interest on the original deposit would commence October 1, 1974, and run to September 23, 1975. Consequently, we reverse the trial court in this regard.

Affirmed in part and reversed in part.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.