ARKANSAS STATE HIGHWAY COMMISSION v.
H. C. CARRUTHERS ET UX

5-4864                                              441 S.W. 2d 84

Opinion Delivered May 26, 1969 .

*Thomas B. Keys* and *Philip N. Gowen* for appellant.

*George J. Cambiano* for appellee.

GEORGE ROSE SMITH, Justice. This is a condemnation suit brought by the highway department to acquire 13.72 acres as a right of way for Interstate 40 across part of the lands of the appellees, Dr. and Mrs. Carruthers. Dr. Carruthers fixed the landowners' damages at $17,727. His only expert witness gave a figure of $12,635. The jury's verdict was for $13,500. On appeal the commission contends that the amount of the verdict is not supported by substantial evidence.

Dr. Carruthers owns other land in the vicinity, but for the purposes of this suit only a 190-acre tract was in issue. That tract comprises four forties in a north-south line and 30 acres in a fifth forty adjoining the southernmost full forty on the west. For clarification we insert a plat that is in the record. The Carruthers land is outlined in heavy black lines. The right of way being taken is shown as a wide diagonal black line.

Dr. Carruthers was the principal witness for himself and his wife. He explained that he raised cattle on other neighboring land. He used the 190-acre tract in

SW SE 34    SE SE 34

NW NE 3    NE NE 3

SW NE 3    SE NE 3

Farm Road

NW SE 3    NE SE 3

Farm Road "7"

Canal 7

Existing Hwy No4

TRACT 502

Scale: 1″ 660′

controversy to grow alfalfa, lespedeza, and wheat as feed for his cattle. At the time of the taking, however, two of the forties were planted to soy beans—one by a tenant and the other by the doctor's employees as a bonus to them.

Dr. Carruthers, testifying from notes made in advance, valued the 190 acres before the taking at $400 an acre, or $76,000. He valued the land after the taking at $58,273. On cross examination the witness was given an opportunity to explain the $17,727 difference, but a study of his testimony shows that he actually failed to do so.

In explaining his figures the witness said that the highway department had taken 13.72 acres, which he valued at $400 an acre. He stated that the "angles" created by the new highway made it impossible to farm a total of 3.85 acres with modern equipment, reducing the value of those angular areas to $50 an acre. He reduced to the same extent the value of 1.13 acres that he thought would be needed for turnrows after the construction of the new road. Finally, he reduced the value of all the rest of the tract by $50 an acre by reason of its having been cut in two. The witness did not add up his figures on the witness stand, but they may be tabulated as follows:

| | |
|---|---:|
| 13.72 acres taken, at $400 an acre | $ 5,488.00 |
| 3.85 acres damaged, at $350 an acre | 1,347.50 |
| 1.13 acres damaged, at $350 an acre | 395.50 |
| 171.30 acres damaged, at $50 an acre | 8,565.00 |
| 190.00 acres | $15,796.00 |

Despite the fact that Dr. Carruthers was allowed to refer freely to his notes, it will be seen that his dollar-and-cents figures fall almost $2,000 short of the overall

damages that he claimed. It may also be noted that in his testimony he asserted damages of $1,347.50 for the four "angles" resulting from the diagonal crossing of the highway. Yet the witness, in arriving at his value of $76,000 for the land before the taking, did not reduce his figures by even a penny to compensate for two identical angles already created by Highway 64. Can two such directly contradictory estimates with respect to identical situations both be regarded as substantial evidence?

From the foregoing tabulation it will be seen that Dr. Carruthers attributed more than half of his asserted damages to an across-the-board depreciation at the rate of $50 an acre. That valuation must be tested by our settled rule that the testimony of a witness, whether a layman or an expert, cannot be regarded as substantial evidence if he is unable to give any reasonable basis for his opinion. Quotations from three of our recent decisions will make the point clear.

In *Arkansas State Highway Commn. v. Dupree*, 228 Ark. 1032, 311 S.W. 2d 791 (1958), we affirmed the award only on condition that it be reduced by remittitur from $100,000 to $62,400. In the course of that opinion we said:

> It is shown by the evidence that the owners now have 289 head of cattle on the property, but there is not a scintilla of evidence that they have ever made any money whatever out of cattle. Of course, it was to the interest of the owners to show the full earning capacity of the place, and yet they produced not one iota of evidence to the effect that they had ever made any money whatever out of cattle. If the place was worth from $450,000 to $600,000, as estimated by witnesses produced by the owners, then, based on the capacity to support from 800 to 900 head of cattle, there would be an investment of from $500 to over $600 in land to support one cow.

The record is completely void of any evidence to the effect that a person could pay such a huge amount for land on which to run cattle, and make a profit. Of course, the amount of profit that could be made on the land from farming or raising livestock is of primary importance here as going to show the value of the land, because there is no contention that the potential value of the property for industrial or residential purposes because of its location is lessened by reason of the new road.

Mr. William A. Payne, real estate appraiser engaged in the mortgage loan business, testified that the value of the property before the taking was $371,500 and after the taking $287,500, and he gave $87,000 as the amount of damages, including the cost of fencing. Of course, the witness could not arrive at a sound valuation without taking into consideration what the property would produce, and Mr. Payne did not know if any cotton is planted on the place, and thought the cotton allotment to be 2,200 acres. The Government pays $46 per acre if the land is placed in the land Bank.

Mr. George Ed McCain has a place across the road from the property involved in this litigation. He places the damages at 20 per cent to 25 per cent of the total value of the place. Mr. McCain thinks the property is worth $200 per acre straight across, or $600,000 for the 3,000 acres, and that it will be depreciated $150,000 to $200,000 by the construction of the road. Mr. McCain gives no satisfactory basis for placing such a huge market value on the property or for the amount of damages he mentioned.

The owners have been operating this place since 1928 and there is no showing that they have ever made over $14,000 per year out of the property, and in arriving at this figure as to the profit made, noth-

ing is allowed for the work the owners do in connection with the operation of the place. As heretofore stated, Mr. C. S. Dupree gives his full time to looking after the place, and his two brothers give part of their time. Certainly between the three of them their services would be worth at the minimum a total of $9,000, and when this charge is correctly made it would leave a net profit on the place of not over $6,000 per year. No witness says the place is worth from $380,000 to $600,000 because it would produce a net of some $6,000 to $14,000 per year from crops, and there is no showing that the owners have ever made a dime out of cattle.

Again, in *Arkansas State Highway Commn.* v. *Byars,* 221 Ark. 845, 256 S.W. 2d 738 (1953), no fewer than ten witnesses testified to damages that exceeded the amount of the verdict, but we nevertheless reversed the judgment for want of substantial evidence to support it. From the opinion:

> There is no showing that any of the farm lands involved are suitable for any purpose except the production of livestock and hay. Yet not a single witness, including the owners themselves, gave any testimony whatever as to the number of livestock that the lands will support or the amount of feed that can be grown thereon. In determining the value of a livestock farm, one cannot ignore such material facts and arrive at an intelligent opinion.

> Whether there is substantial evidence to support a verdict is not a question of fact, but one of law. Because a witness testifies as to a conclusion on his part does not necessarily mean that the evidence given by him is substantial, when he has not given a satisfactory explanation of how he arrived at the conclusion.

> \* \* \* \*

> "The difficulty is in differentiating between *any* evidence and substantial evidence ... Must ap-

pellate judges close their eyes and their minds to the obvious fact that in a particular case the evidence, from its very nature, could not have been convincing, though it produced a given result? Shall we affirm that such evidence was *necessarily* substantial because it was favorably acted upon by the jury?"

Finally, our opinion in *Arkansas State Highway Commn.* v. *Stanley,* 234 Ark. 430, 353 S.W. 2d 173, 4 A.L.R. 2d 749 (1962), is directly in point with respect to testimony which states a dollar-and-cents valuation without any supporting reasons for the witness's conclusion:

After this introductory testimony Stanley stated that in his opinion the tract taken is worth twenty million dollars. This figure is arbitrary in that it has no relation whatever to any fact in the record. Stanley made no effort to say how he arrived at his valuation; it seems to have been plucked from the air and might equally well have been ten thousand dollars or a hundred million dollars. Even the opinion of an expert in the field of land valuation is not substantial evidence if he fails to show a fair or reasonable basis for his conclusion. *Ark. State Highway Comm.* v. *Byars,* 221 Ark. 845, 256 S.W. 2d 738. There is still less reason for finding the fanciful figure fixed by Stanley to be a sufficient foundation for the verdict in this case.

The principles announced in those cases apply to this one. Dr. Carruthers took the position that the three untouched forties north of the interstate highway had been uniformly damaged at the rate of $50 an acre by being separated from the smaller part of the property south of the new right of way, but he gave no substantial reasons for his conclusion. By contrast, in the recent case of *Arkansas State Highway Commn.* v. *Freyaldenhoven,* 246 Ark. 688, 439 S.W. 2d 791, the landowner proved the need for access from one part of his land to the other and the damage he suffered from

the loss of that access. Here there is no such factual proof.

Dr. Carruthers made several statements about the loss of access to one part of the tract from the other, but his assertions were so vague as to be of no help to the jury. He said that he and his brother, who owned other neighboring lands, had a "headquarters" at a point that cannot be located from the testimony in the record (except that it was not on the 190-acre tract in issue). But Dr. Carruthers failed to say what the headquarters consisted of or to what extent his farming operations involved movements between the headquarters and the rest of the property. How could the jury assign a pecuniary loss to the suggested possibility that the 190-acre tract had been separated from a headquarters about which the jurors knew nothing whatever?

In testifying about loss of access the doctor also referred to an overpass which the highway department had provided at the southeast corner of the 190-acre tract. Dr. Carruthers admitted that it was a good overpass, but he said that it was not wide enough for the passage of a four-row cultivator. There is, however, not one line of testimony to show how often such passages may be necessary or to show that the doctor had ever owned or used such a cultivator. Of what help was such testimony to the jury in evaluating the claimed damage of $50 an acre?

In fact, Dr. Carruthers wholly failed to say why it was necessary for him or his employees to travel from one side of the new highway to the other in order to raise fodder for cattle. Moreover, at the time of the taking 80 acres north of the highway were being devoted to the cultivation of soy beans by tenants or employees of the landowners. There is not a syllable of proof to show that those persons had any need for access to the property south of the highway. How could such utterly vague testimony assist the jury in its deliberations?

The doctor also said that he would have to construct new roads involving a total area of 2.8 acres. He did not say to what extent those roads would replace the ones that already existed, or what type of roads the new ones would be, or what they would cost, or to what extent they might affect the value of the farm. Can such fragmentary evidence assist the jury in reaching a reasoned verdict?

Dr. Carruthers' testimony was actually quite similar to that of the landowner in the *Stanley* case, *supra*. Although he voiced the conclusion that the new highway would damage his land by $50 to the acre, he gave no supporting facts for that conclusion. As in the *Stanley* case, the $50 figure was apparently plucked from the air and might just as well have been $10 or $100. Such fanciful conclusions do not attain the dignity of substantial evidence.

We need not recite in detail the testimony of the other three witnesses called by the landowners. Dr. Carruthers' brother and the latter's tenant both echoed the doctor's assertion of an across-the-board damage to the entire tract at the rate of $50 an acre. But neither gave any factual basis for his statement. Rather to the contrary, the brother insisted on cross examination that the untouched forty lying more than a half mile away from the new highway was damaged to exactly the same extent as the forty that was actually bisected by the new construction. That a sympathetic jury may have given credence to such a statement does not lessen its absurdity.

One real estate appraiser, Forrest Griswood, testified for the landowners. He valued the land at $300 an acre before the taking and paralleled Dr. Carruthers' testimony by finding a uniform damage of $45 an acre to the tract as a whole. The trouble is that he was able to adduce no facts whatever to support his expert opinion. Quite the contrary, he admitted on cross examina-

tion that most farms in the vicinity are similarly divided by public roads. Moreover, despite his insistence that the farm as a whole had been reduced in value from $300 to $255 an acre, he conceded on cross examination that *after* the construction of the new highway Dr. Carruthers had actually sold 80 or 90 acres of the very land in question for $350 an acre! No reasonable inference can be drawn from the witness's testimony as a whole except that the untouched northern forties were in fact benefited by the new highway.

The jury's verdict demonstrably exceeds the greatest amount that can be said to be supported by substantial proof. In a situation of this kind, where no particular ruling by the trial court is assigned as error, it is our practice to allow the landowner to remit down to the most liberal amount that we would approve if the jury had returned a verdict for that sum. *Arkansas State Highway Commn. v. Darr,* 246 Ark. 204, 437 S.W. 2d 463 (1969). Here that amount cannot exceed $10,000, because the proof would not support the allowance of a greater sum even if one should include a severance award of $50 an acre for the two southernmost forties that were crossed by the new construction. Hence the judgment will be affirmed if a remittitur of $3,500 is filed within 17 days; otherwise the judgment will be reversed and the cause remanded for a new trial.

FOGLEMAN, J., concurring in part; dissenting in part.

BYRD, J., dissents.

JOHN A. FOGLEMAN, Justice. I agree with the majority that the landowner's testimony in this case did not constitute substantial evidence to support a jury verdict for an amount greater than the damages arrived at by any expert witness. I do not agree with some of the factors upon which the majority find the testimony insubstantial.

I do not see how the conclusion is reached that Dr. Carruthers did not consider the angles created by Highway 64 in arriving at his value of the tract before the taking. Dr. Carruthers was asked to state his opinion of the value of the 190-acre agricultural tract, which was treated as an integral unit for valuation purposes by all parties. He responded in the same manner as is common with people who establish the criteria for market value, i.e., buyers and sellers of real estate. He gave the value of the tract in dollars per acre. This is the language spoken by virtually everyone who speaks of values of farmland, if not of all unsubdivided tracts. This was the way appellant's expert Mashburn expressed his appraised value before the taking. This does not mean that each acre bears the same value. It is clear to me that this landowner did not mean his testimony to be so construed. He had pointed out that there were roads and turnrows on the land, that part of the tract was wooded land, and that part of it was in drainage ditches. Although a purchaser would ascertain the acreage taken up in roads, ditches, woods, turnrows and angles, he would also arrive at a per acre figure for the whole tract in deciding what he would pay. There is no indication that Dr. Carruthers put separate values on the "disadvantaged" acres in arriving at his total "before taking" value. I trust that we will not find value testimony insubstantial simply because the language of the real estate market place is used by a witness. We are not likely to change that dialect outside the courtroom, where the market value is actually established.

Furthermore, the failure to show that the doctor used or owned four-row farm equipment should be of no significance whatever. Even if the doctor never had farmed at all but was simply a landlord who rented his lands to tenants, any impediment to the use of four-row mechanized farm equipment in 1967 had a definite bearing upon the price any purchaser having the ability and occasion to purchase his farmland would be willing to pay for it. Every element which a businessman of

ordinary prudence would consider before purchasing property should be considered in arriving at its value. *Kirk v. Pulaski Road Improvement District No.* 10, 172 Ark. 1031, 291 S.W. 793. A person buying farmland in the last half of the 1960's who did not consider ability or inability to use four-row equipment on agricultural land would not be one of ordinary prudence. In the present cost-price squeeze on agriculture the necessity for use of equipment this size or larger wherever possible is a matter of common knowledge which should not have to be shown by evidence.

The fact that Dr. Carruthers might not need to cross the highway to raise fodder for cattle or that he grew alfalfa and cattle feed on part of the tract and permitted tenants and employees to grow soybeans on the remainder is also overemphasized by the majority. The use being made of the land by him is of minor importance. It is the land's availability for the most valuable purpose for which it is adapted and can be used that determines market value. *Scott v. State,* 230 Ark. 766, 326 S.W. 2d 812; *Desha v. Independence County Bridge District No.* 1, 176 Ark. 253, 3 S.W. 2d 969; *Rinke v. Union Special School District No.* 19, 174 Ark. 59, 294 S.W. 410; *Weidemeyer v. Little Rock,* 157 Ark. 5, 247 S.W. 62; *Drainage District No.* 11 v. *Stacey,* 127 Ark. 549, 192 S.W. 904. When the testimony of all witnesses is reviewed the only reasonable conclusion that could be reached is that the highest and best use of this property for market value consideration before the taking was as an integral farm unit.

Neither do I agree that the testimony of Forrest Griswood has no reasonable basis or that it does not constitute substantial evidence. This 190-acre agricultural tract was connected for its entire length by a farm road connected with existing Highway 64. It was not badly broken by drainage ditches. There was a deep ditch which provided drainage for the entire tract. Both parties treated it as an integral unit. Griswood also

spoke the common language of the market place when he said that the damage to the Carruthers tract was $45 per acre. His qualifications as an expert witness were admitted by appellant. Griswood supported his statement by testimony that the tract was disintegrated as one operation and that a buyer would not pay as much for a farm that was disintegrated. He commenced to explain his answer but was interrupted by appellant's attorney who was anxious to interrogate him about a subsequent sale of part of the lands. His admission that most farms in the vicinity were divided by public roads seems to me to be without significance in determining whether his testimony was substantial. No one contended, or even suggested, that the value of these other lands, as farms, would not have been greater if they had not been so bisected. Griswood stated the truism that expense of operation is greater when the lands are divided than when they are in one block.

The sale of part of these lands by the owner is also given too much weight by the majority in measuring the substance of this expert's testimony. It is to be noted that Griswood's "before" valuation was $300 per acre, the same as appellant's expert Mashburn's, but less than the $350 per acre sale. It appears that this sale was made by Dr. Carruthers to his brother, who owned a lot of land on which he conducted farming operations in the immediate vicinity. Dr. Carruthers shared a farming headquarters with this brother. Such transactions are seldom at arm's length. Usually, a tract of farmland is more valuable to an adjoining owner or to one with a headquarters nearby than it is on the open market.

I submit that every factor mentioned about Griswood's testimony by the majority has to do with its weight but not its substance. The majority finds an inference in his testimony that part of the Carruthers land was benefitted by the highway, in some way I cannot find explained. Neither the appellant nor its witnesses suggested any such benefit.

I am also puzzled by the disposition of this case. I suppose appellee cannot be hurt by the court's offer of an option. I would reverse and remand as we did in *Arkansas State Highway Commission* v. *Darr*, 246 Ark. 204, 437 S.W. 2d 463. I can see no difference in this case and that. In both, the single ground of appeal was that there was no substantial evidence to support the verdict. In both, the testimony which would support the verdict was held not to be substantial. The *Darr* opinion stated that it fell in the category of cases where error in the trial court enhanced the award. There we were unable to find a satisfactory figure clearly not excessive because acceptance of the values fixed by an expert for the landowner, whose testimony was substantial, would ignore the testimony of the highway commission's experts. Here, the majority opinion leaves the record with only appellant's experts as to "before" and "after" values. Yet the landowner may accept an amount twice that which would be supported by appellant's appraiser who found the greatest amount as just compensation.