JIM PAWS, INC. *v.* EQUALIZATION BOARD OF GARLAND COUNTY, ARKANSAS

86-13                                            710 S.W.2d 197

Supreme Court of Arkansas
Opinion delivered May 27, 1986

*Wootton, Glover, Sanders, Slagle, Parkerson & Hargraves, P.A.*, by: *Richard L. Slagle*, for appellant.

*Robert Ridgeway, Sr.*, Prosecuting Attorney, for appellee.

JACK HOLT, JR., Chief Justice. The Velda Rose/Ramada Inn Hotel was reappraised and assessed by the Garland County Assessor at a total valuation of $5,444,700 in June, 1981. The appellant, Jim Paws, Inc., purchased the hotel for $1,000,000 in July, 1981. Appeals of the assessment to the Garland County Equalization Board and the Garland County Circuit Court resulted in a reduction of the assessed value to $4,458,750. Appellant argues on appeal to this court that the method of assessment used by the county appraiser was arbitrary and unreasonable and did not reflect the true market value of the property. Appellant also contends that the circuit court should have excluded testimony by the county's expert witness because it had no reasonable basis. This appeal was certified to the Supreme Court by the Court of Appeals because it involves methods of reappraising property, an issue of significant public interest under Sup. Ct. R. 29(4)(b).

The assessment and appraisal of appellant's property was based solely upon the "replacement cost new, less depreciation", approach. Upon appellant's petition for review, the circuit court reduced the assessment because of incorrect evaluations of the effective age and depreciation of appellant's property. Appellant contends that the reappraisal is arbitrary and unreasonable and grossly exceeds the true market value of the property and that the purchase price of $1,000,000 is its true market value. We agree that the assessment was clearly erroneous and arbitrary and exceeded the true market value of the property.

In reversing the circuit court, we are aware that it is only in the most exceptional cases that an appellate court will grant a reassessment of property. In *St. Louis-San Francisco Ry. Co. v. Arkansas Pub. Serv. Comm'n*, 227 Ark. 1066, 304 S.W.2d 297 (1957), this court discussed the standard of review in these cases:

> The purpose of any Court appeal from an assessment or equalizing agency is to see that the assessment is neither erroneous in figures, nor arbitrary in measuring, nor

confiscatory in results. In 84 C.J.S. 1123, the effect of the holdings is summarized in this language: "On an appeal from an assessment, the Court will not disturb the decision of the assessors unless it is clearly erroneous, or, unless, as required by Statute, the assessment is manifestly excessive, fraudulent, or oppressive. . . ."

Nevertheless, property must be assessed according to its "value". Article 16, § 5 of the Arkansas Constitution, as it reads after amendment 59, states that "[a]ll real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State." Prior to amendment 59, the pertinent part of article 16, § 5 read much the same, requiring that all property be assessed according to its value.

*Arkansas Pub. Serv. Comm'n* v. *Pulaski County Equalization Bd.*, 266 Ark. 64, 582 S.W.2d 942 (1979), held that Act 411 of 1973 and Act 188 of 1969 were unconstitutional in that they violated the longstanding interpretation by the Supreme Court and the legislature that value meant "current market value". That opinion reviewed the Arkansas case law and statutory authority which established the premise by which assessment statutes and methods must be measured. This premise is that property must be assessed according to its "real and true value"; the "true and full market or actual value". In calculating the market value, many factors must be considered, and the type of inquiry will depend on what type of property is involved, but "all of these questions are to be considered for the purpose at last of ascertaining the market value of the tract in question, and that is the value which must be adopted for the purposes of assessment when it has been ascertained." *Id.*, at 76, quoting *American Bauxite Co.* v. *Board of Equalization*, 119 Ark. 362, 177 S.W. 1151 (1915).

In the present case, the county appraiser did not consider several factors, particularly the type of property involved, i.e. income-producing property, in determining real and true value. To the contrary, the county appraiser limited its evaluation of appellant's property to the cost of replacement or "new cost" of the hotel, including the restaurant and parking facilities, with the

estimated depreciation of the property subtracted.

■ The appellant, in support of his claim that the reappraisement exceeds the true market value, introduced testimony from C.V. Barnes, an appraiser with more than 40 years of experience, concerning the three different approaches used in appraising this type of property. In addition to the "new cost" approach used by the county appraiser, there are the market data approach and income approach. The market approach compares sales of similar properties in the community and looks at any arms-length transactions involving the subject property. The income approach estimates the fair market rental of the property, determines what the net income for the property would be, and then capitalizes the net income to obtain the dollar value of the property. Although both the county appraiser and the expert witness for the county stated that the Public Service Commission manual, published for use by county appraisers, recognizes all three methods, only the "new cost" method was used in this instance.

Barnes testified that, according to the market approach, using the actual sale of the property as the primary source, the property's estimated value was between $1,150,000 and $1,250,000. Using the facility's historical occupancy rate of 40%, Barnes estimated the value of the hotel to be $1,365,000 based on the income approach. Barnes stated that with this type of property, the income approach is the most reliable, because its value to an owner is determined by the future income the property can produce. He did an estimate based on the cost approach, but did not consider that to be a viable appraisal because it was so out of line with what he concluded from the other two approaches. Although the replacement cost figure used by the county appraiser was reasonable, he said the final conclusion was not because the depreciation figure did not account for the physical, functional and economic depreciation which should have been deducted, and because it did not consider the income and market approaches. Barnes emphasized the economic obsolescence of the property, caused by occupancy rates in Hot Springs dropping from between 70% and 80% twenty years ago to between 40% and 50% now.

The county appraiser who was involved in the reappraisal in

August, 1981, testified that the building was classified according to the type of construction in accordance with the manual, and given an actual age and effective age due to the condition of the property for depreciation. No consideration was given to the income approach, but some market research was done, although there was no indication that this had any effect on the assessment. On cross-examination, he said he has no experience in the construction of monolithic concrete, high-rise structures. He said he did not consider the location of the hotel in making his appraisal.

John Zimpel, the research, information and education officer and realty appraiser supervisor for the Assessment Coordination Division, also testified for appellee as an expert witness. Zimpel valued the property at $5,211,576 using the new cost approach. Using national occupancy rates of 50% and 60%, and various estimates of revenue and operating expenses, his income approach appraisals ranged from $3,225,909 to $8,375,765.

Appellant objected at trial to the testimony of Zimpel because his income method estimates were "based on some sort of fantasy occupancy rate and phantom expenses" that had no relationship to the area or the historical evidence presented regarding the subject property. Appellant argues that Zimpel's testimony should have been stricken for this reason, along with the fact that he admitted on cross-examination that he had no personal knowledge of typical hotel expenses or capitalization rates used in this type of property; he could not remember any other hotels he had appraised in Arkansas; he deducted expenses that were incurred during a year when the hotel was operating at a 41% occupancy rate while at the same time projecting an income for 50% occupancy; he had no evidence of what the typical occupancy rate was in Hot Springs; and he made no allowance for any kind of maintenance or replacement of expendable items as he should have.

If there is no sound and reasonable basis for expert testimony, the testimony will be stricken. *Ark.-Mo. Power Co.* v. *Sain*, 262 Ark. 326, 556 S.W.2d 441 (1977). If the cross-examination shows that the testimony has a weak or questionable basis, however, then that goes to the weight and credibility given to the testimony rather than to the admissibility. *Arkansas State*

*Hwy. Comm'n* v. *Russell*, 240 Ark. 21, 398 S.W.2d 201 (1966). Further, the decision of the admissibility of such evidence rests largely within the sound discretion of the trial court and will not be reversed unless an abuse of discretion is found. *Dildine* v. *Clark Equip. Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984).

We find no abuse of discretion in the admission of the evidence, particularly in light of the fact that any objections to the reliability of the testimony were adequately addressed upon cross-examination of the witness. We do find, however, that the appellant was able to show at trial that the estimates of its expert based on the income approach and the acquisition of the property adequately demonstrated that the appraisal did not reflect the true value of the property and that the county's assessment based on the "new cost" approach was excessive and clearly erroneous.

We have recognized in cases involving condemnation of property by the State Highway Commission that use of reproduction costs, less depreciation, as a means of determining the true market value of property is a method that is inherently unreliable, especially when dealing with income-producing property. In *Arkansas State Hwy. Comm'n* v. *Mahan*, 249 Ark. 1022, 463 S.W.2d 98 (1971), the court stated:

> Nichols points out that evidence of reproduction costs, though admissible in most jurisdictions, should be received with caution, "because the reproduction cost of a structure sets an absolute ceiling on the market price of that structure, a ceiling which may not be, and frequently is not, even approached in actual market negotiations. When this inherently inflationary attribute of reproduction cost evidence is considered in light of the misleading exactitude which such evidence almost invariably imparts to a jury unsophisticated in the niceties of economics, the justification for placing substantial safeguards upon its admission is apparent." Nichols, Eminent Domain, § 20.2 (3d ed., 1969).

We reversed an approval of an assessment by the Board of Equalization in *Lile* v. *Pulaski County Equalization Bd.*, 252 Ark. 508, 479 S.W.2d 856 (1972). In *Lile*, the assessor valued a lot by establishing a front foot value in each block of downtown Little Rock and applying it to the property being assessed. He

never testified as to what he considered to be the "true market value in money". We held there that the method used did not accurately establish the value of the property and that the appellant had produced substantial evidence that the property was worth considerably less than the assessment.

In this case, appellant produced extensive testimony and a report prepared by Barnes using actual figures from the operation of the hotel and restaurant, in support of a much lower estimate of the value of the property. The actual sale of the property was for less than one-fourth of the appraisal even after it had been reduced by the equalization board and the circuit court. The method used by the county appraiser seems to be the least reliable of the three methods approved by the manual for appraising this type of property. Zimpel himself testified that the definition used by the state of fair market value is "the most probable price expressed in terms of money that a property will bring on the open market in a transaction between a willing and knowledgeable seller and willing and knowledgeable buyer in an arms-length transaction." Appellant's evidence that the purchase of the hotel was an arms-length transaction between two businessmen, both knowledgeable in the hotel business, and under no compulsion to buy or sell, was unrebutted by the county.

We do not hold that the new cost approach to appraising property is a method that will always lead to an excessive appraisal. When income-producing property is assessed, however, and the new cost approach is exclusively used without any consideration of the cost of acquisition or of the value of the property in terms of the income that property will generate for the owner, then the appraisal is not aimed at determining the property's true market value. A hotel generally has two primary measures of value to an owner — cost of acquisition and how much income it can produce. These values will often be totally irrelevant to the cost of replacing the hotel twenty years after it was originally built. The county appraiser admitted he did not consider the income approach, and the judgment and findings of the circuit court gave no indication that the income or market approaches were accounted for in reaching its decision. To the contrary, the circuit court judgment merely followed the approach used by the county appraiser, using the same replacement cost estimate. The only change was in the depreciation, which the

122

circuit court increased by requiring the assessor to estimate depreciation based on the hotel's actual age rather than the "effective" age the assessor had originally given it. Regardless of the method used for appraisal, the burden remains on a challenging party to show it resulted in a clearly excessive valuation. In this instance, appellant has met that burden.

■ Although it is clear that the appraisal in this instance was arbitrary and manifestly excessive, it is not within the province of appellate courts to assess property. *Cook* v. *Surplus Trading Co.*, 182 Ark. 420, 31 S.W.2d 521 (1930). We therefore remand to the circuit court to set a true market value on the property which considers the income and market approaches to assessment.

Reversed and remanded.

PURTLE, J., not participating.