FORD MOTOR COMPANY and Quality Ford, Inc.
*v.* Dean MASSEY

92-1153 855 S.W.2d 897

Supreme Court of Arkansas
Opinion delivered June 1, 1993

*Baker & McKenzie* and *Wright, Lindsey & Jennings*, for appellants.

*Baker, Wallace, Jensen & McCalliser* and *Greene Law Offices*, for appellee.

ROBERT L. BROWN, Justice. Two issues are raised by the appellants, Ford Motor Company and Quality Ford, Inc., in this appeal: 1) whether the trial judge erred in refusing to grant a

judgment notwithstanding the verdict due to the absence of a reasonable basis for the expert's opinion presented on behalf of the appellee, Dean Massey; and 2) whether the trial judge further erred in refusing to strike evidence of warranty occurrences not sufficiently similar to the case at hand. We hold that the trial judge did not abuse his discretion in either instance, and we affirm the verdict and judgment. Dean Massey also cross-appeals on several issues which are to be entertained only in the event that we reverse the judgment. Because we affirm the judgment, we do not reach the issues on cross appeal.

On August 28, 1990, Dean Massey and his wife, Connie Massey, were gathering hickory in a wooded area near their Saline County home to use in a barbecue. Dean backed up the couple's 1986 Ford Bronco near to some hickory saplings. He got out of his truck and walked several feet behind it in order to fasten a chain around two of the trees. Connie moved to the driver's seat and began to back the Bronco toward the trees so that Dean could attach the chain to the truck.

Dean next heard the engine rev. He looked up and saw the Bronco three feet away "coming fast" toward him. He cried out twice to his wife, but she was unable to stop the truck. Witnesses testified at trial that Dean was caught underneath the vehicle and dragged over the hickory saplings, a five-inch-thick pine tree, and thigh-high underbrush. Photos and testimony revealed a 62 foot swath cut through the woods. Dean suffered neck and back fractures, which severed his spinal cord and rendered him a quadriplegic. He admitted at trial that his recollection of the incident was sketchy.

Within a short period of time following the incident, Connie Massey gave differing statements of what happened, though by all accounts she was distraught. She told one witness that the Bronco kept going after she took her foot off the accelerator. She told a second witness that the truck ran over her husband and something was wrong with it. She related to the West Pulaski County Fire Chief that her foot got caught between the brake and gas pedal. And she told a Saline County Deputy Sheriff that her foot slipped off the brake and hit the accelerator.

On August 21, 1991, Dean and Connie Massey filed a tort action against the appellants, Ford Motor Company and Quality

Ford, Inc., on the basis that the throttle cable assembly of their 1986 Ford Bronco was defective. They alleged 1) that the suppliers of the vehicle negligently failed to warn them of a defect in the product, and 2) that Ford and Quality were strictly liable for placing a defective product in the stream of commerce. Before the matter was brought to trial, Connie Massey died in an auto accident. At trial, the Saline County Circuit Court directed a verdict for Ford and Quality on the failure-to-warn claim following Massey's case but permitted the strict liability claim to go to the jury. After seven days of trial, the jury returned a $7 million verdict on the strict liability claim, with interest to accrue at 8 ½ percent per annum. Ford and Quality then filed a motion for judgment N.O.V., raising the same issues that are the substance of this appeal. That motion was denied.

## I. REASONABLE BASIS FOR EXPERT OPINION

Ford and Quality argue, as their first point for reversal, that Dean Massey's expert witness, Larry Pipes, had no reasonable basis for his opinion that Dean's injuries were caused by a defect in the 1986 Ford Bronco at the time it was originally sold. Because of that, they contend, the trial judge erred in failing to grant their motion for judgment notwithstanding the verdict.

On review of a trial judge's denial of a motion to set aside a jury verdict on liability, the question is whether the verdict is supported by *any* substantial evidence. *Johnson* v. *Clark*, 309 Ark. 616, 832 S.W.2d 254 (1992); *Minerva Enterprises, Inc.* v. *Howlett*, 308 Ark. 291, 824 S.W.2d 377 (1992). The evidence most favorable to the appellee is given the benefit of all reasonably permissible inferences. *Johnson* v. *Clark, supra; Scott* v. *McClain*, 296 Ark. 527, 758 S.W.2d 409 (1988).

A properly qualified expert's opinion constitutes substantial evidence unless it is shown that the expert's opinion is without reasonable basis. *Wallace* v. *Williams*, 263 Ark. 702, 567 S.W.2d 111 (1978). If there is no sound and reasonable basis for expert testimony, the testimony is subject to being stricken. If, however, the cross-examination shows that the testimony has a weak or questionable basis, that goes to the weight and credibility to be given the testimony rather than to its admissibility. *Ishie* v. *Kelley*, 302 Ark. 112, 788 S.W.2d 225 (1990); *Jim Paws, Inc.* v. *Equalization Bd. of Garland Co.*, 289 Ark. 113, 710 S.W.2d 197

(1986). The weight and value to be given to the testimony of expert witnesses lies within the exclusive province of the jury. *B & F Engineering, Inc.* v. *Cotroneo*, 309 Ark. 175, 830 S.W.2d 835 (1992). Whether a witness may give expert testimony rests largely within the sound discretion of the trial judge, and that determination will not be reversed absent an abuse of discretion. *Montgomery* v. *Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992).

In the case before us, the expert in question, Larry Pipes, was the owner of a Missouri-based auto repair firm and an auto mechanic training and consulting firm. In Pipe's expert opinion, an "internal fault" in the throttle cable assembly caused the accident and injury to Dean Massey. In his examination of the vehicle, Pipes testified that he disconnected both ends of the throttle assembly — which consists of a stainless steel cable running through a conduit, plus springs, sockets, and fittings — and manually manipulated the steel cable through the conduit. While moving the cable back and forth, Pipes stated, he felt a "resistance to motion" which he described as a "rough spot" or a "stiff point" and which he felt was attributable to an "internal fault." He ultimately concluded that the throttle cable assembly had "hung" on the day of the accident after Connie pressed down on the accelerator which he described as "hard" or "stiff" and that the cable was defective when manufactured.

Ford and Quality urge that Pipe's opinion contained four analytical flaws. Essentially, they urge 1) that Pipes's opinion was based on an irrelevant test, 2) that the cable had not stuck previously for 51,000 miles before the accident, 3) that Pipes's opinion was at odds with the testimony of the appellee himself, and 4) that it was contradictory to the testimony of the only witness with personal knowledge of the condition of the vehicle shortly after the accident — Bobby Green, a mechanic. According to the appellants, in normal operation the cable is never pushed, as described by Pipes. Instead, it is pulled toward the passenger compartment when the driver depresses the accelerator pedal and is pulled back toward the engine by three return springs when the pedal is released. Ford's own expert, Lee Carr, a mechanical engineer, likened pushing on the cable to pushing on a rope.

Although Pipes agreed, under cross-examination, that dur-

ing normal operation of the vehicle, the cable is pulled rather than pushed, he asserted that the pushing test is "as valid [a test] as every Board Mechanic in America would use." Moreover, he described the operation of the steel cable and conduit in great detail and testified that he had built throttle cable assemblies himself and was quite familiar with the design and materials used in the Bronco's assembly. The steel cable, he testified, was designed to move freely within the conduit when pulled toward the passenger compartment by depressing the accelerator or returned to its original position by the springs.

It is the prerogative of the jury to believe or to disbelieve the testimony of any witness. *Johnson* v. *Clark*, *supra*; *Hodges* v. *Jet Asphalt & Rock Co.*, 305 Ark. 466, 808 S.W.2d 775 (1991). Where there is a conflict in the testimony and evidence presented by an expert, the determination by the jury of the issues is conclusive. *B & F Engineering, Inc.* v. *Cotroneo*, *supra*. In this case, the essential component of Larry Pipes's testimony was that he felt a rough spot or stiff point as he manually manipulated the cable through the conduit, which he attributed to an internal fault. We cannot say that this explanation was not reasonable. The jury was entitled to believe him or not.

The appellants argue on a related point that even if the pushing test provides a reasonable basis for the expert's opinion, it still supplies no evidence that the presumed internal fault would cause the cable to catch during normal operation. This also was a credibility matter for the jury to assess. As Dean Massey noted, Pipes spoke with Connie Massey after the accident. Connie Massey had been "clear" that she was not depressing the gas pedal when the truck continued to accelerate. When an expert's testimony is based on hearsay, lack of personal knowledge does not mandate an exclusion of the opinion but instead presents a jury question concerning the weight to be attached to that opinion. *Dixon* v. *Ledbetter*, 262 Ark. 758, 561 S.W.2d 294 (1978). There was, too, additional evidence that the throttle cable had hung. A mechanic, Bobby Green, testified that the Bronco engine was revving at 2400 rpms the next day, and there was physical evidence that the Bronco had plowed through the woods for 62 feet.

352 

■ The appellants also emphasize that there is no evidence that the throttle cable stuck previously during the Ford Bronco's 51,000 miles of travel. Countering this, Larry Pipes testified that the life of the throttle cable should be the life of the vehicle and that in his judgment the cable was defective when manufactured and sold by Ford and that this caused the accident. His reasons for concluding that the defective cable precipitated the accident have already been stated in this opinion. Again, these were all evidentiary matters for the jury to weigh and evaluate. *B & F Engineering, Inc.* v. *Cotroneo, supra*

■ The appellants then point to the different construction that Pipes placed on the testimony of Bobby Green, who had driven the Bronco the morning after the accident and who found the engine revving excessively. Green testified that he had looked under the hood and saw no foreign object holding the throttle open and determined that the problem was somewhere in the fuel system. Pipes observed that if Green was looking for a foreign object, he would not have been focusing on a hung cable. We do not view the testimony of Bobby Green and Larry Pipes as irrevocably in conflict. Green, by his own admission, did not do a thorough inspection of the problem but only looked to see if something was holding the throttle open. His first thought was that the problem lay in the fuel system. Pipes's explanation is not unreasonable, and we do not view the testimony as incompatible.

Finally, the appellants insist that, in order to reach the conclusion that an internal fault caused the accident, Pipes had to disregard the testimony of the only living eyewitness to the accident — the appellee himself. Dean Massey testified that his best estimate was that the Bronco was only three feet away when the engine began to rev. The only thing which could have caused the engine to rev initially, the appellants say, was Connie Massey's depression of the accelerator pedal. At that point, as Pipes conceded, the accident had already been determined. Yet Pipes emphatically rejected Dean Massey's estimate that three feet was the actual physical distance traveled by the rapidly accelerating vehicle. "I believe that's when he realized he was in peril," Pipes observed, "and that's what's emblazoned in his memory." Massey himself testified that his memory of the accident was sketchy and that the estimated distances were approximations.

Ford and Quality cite us to a decision of the Michigan Court of Appeals, *Green* v. *Ford Motor Co.*, 491 N.W.2d 243 (Mich. App. 1992), where the court excluded an accident reconstructionist's testimony because he was unable to reconcile inconsistencies in his own account and the eyewitnesses' accounts of an accident "other than by disparaging the witnesses' powers of observation." *Id.* at 247. Here, however, Dean Massey admitted that his recollection was imprecise. Pipes, on the other hand, used considerable data in arriving at his opinion. He visited the scene of the accident; he examined the Bronco and studied Ford's warranty records; he interviewed Connie Massey and Bobby Green, read all the depositions, and heard all the testimony; and he examined the throttle cable assembly. Based on this, he concluded that the steel cable had hung after Connie Massey depressed the accelerator which caused the Bronco to travel 62 feet in reverse and drag Dean Massey some distance through the woods.

The Arkansas cases cited by Ford and Quality provide no basis for excluding Pipes's opinion testimony. Both *Sims* v. *Safeway Trails, Inc.*, 297 Ark. 588, 764 S.W.2d 427 (1989), and *Little* v. *George Feed & Supply Co.*, 233 Ark. 78, 342 S.W.2d 668 (1961), deal with the testimony of accident reconstructionists. In *Sims*, a case involving a bus accident, the expert had never seen the bus and was relying on a former graduate student's report on the brakes. Moreover, the expert failed either to develop or to articulate an opinion regarding the cause of the collision when there was no dearth of proof relating to potential causes. Under the circumstances, we upheld the trial judge's exclusion of the expert's testimony. The present appeal, however, entails a different scenario. Here, Pipes did not agree with all of the other testimony but had the benefit of doing a comprehensive investigation before he formed his opinion.

In *Little* v. *George Feed & Supply Co., supra,* the expert witness based his testimony on evidence of highway gouges obtained at the scene of a collision seven months after the accident and on an inspection of the vehicles involved after one of the vehicles have been partially dismantled. On those facts, we affirmed the trial judge's ruling of inadmissibility. In the present case, Pipes stated that he first examined the vehicle in November 1990, three months after the accident, and again in June 1991.

The Bronco was still intact.

In sum, we hold that there was a reasonable basis for the expert's conclusions and, thus, the trial judge was on sound footing in finding that Larry Pipes's opinion testimony constituted substantial evidence. Accordingly, the appellants' motion for judgment N.O.V. was properly denied.

## II. EVIDENCE OF SIMILAR OCCURRENCES

For their second point, Ford and Quality urge that the trial judge erred in two respects regarding Plaintiff's Exhibit 7, a computer printout known as the SE-II report. The report contained 106 warranty repairs to the throttle cable assembly on 1986 Ford Broncos with the same engine and transmission as the appellee's vehicle. First, they allege that Massey failed to show a substantial similarity between the incidents of cable failure in his Ford Bronco and the incidents of cable failure noted in the SE-II report which militated against its admissibility. Secondly, they assert that the trial judge erred in refusing to strike Exhibit 7 after he directed a verdict in favor of the appellants on Massey's negligence claim.

The SE-II report listed 106 warranty repairs to the precise throttle cable assembly at issue in this case, each of which was assigned a code number to designate the reason for the cable assembly repair. Code number "41" stated that the throttle cable assembly "sticks, binds, grabs, seized." There were 45 such repairs. The next highest number of repairs — 32 — was referenced by the number "01" for "broken, cracked." Other codes denoted "improper adjustments," "idles too fast," "bent, kinked," "split seams," "loose," "improperly routed," "misaligned," and other such descriptions. Some entries elaborated on the shorthand code, but most contained no comments.

The general rule with respect to the admissibility of evidence of similar occurrences is that it is admissible only upon a showing that the events arose out of the same or substantially similar circumstances. *Westark Specialties, Inc.* v. *Stouffer Family, Ltd.*, 310 Ark. 225, 836 S.W.2d 354 (1992). The burden rests on the party offering the evidence to prove that the necessary similarity of conditions exists. *Id.* The relevancy of such evidence is within the trial judge's discretion, subject to

reversal only if an abuse of discretion is demonstrated. *Turner* v. *Lamitina*, 297 Ark. 361, 761 S.W.2d 929 (1988).

Whether an occurrence is substantially similar to the matter at hand depends on the underlying theory of the case. *Four Corners Helicopters, Inc.* v. *Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992); *Wheeler* v. *John Deere Co.*, 862 F.2d 1404 (10th Cir. 1988). For example, evidence submitted to demonstrate a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury. *Id.* But the requirement of substantial similarity is relaxed, when the evidence of other incidents is used to show notice or awareness of a potential defect in a product. *Id.*

In this case, after the trial judge directed a verdict in favor of the appellants on that issue, he refused to strike the SE-II report which was already in evidence or to instruct the jury not to consider it. In so ruling, he determined that the report would not prejudice the jury in its determination of the strict liability claim because the jury had a "clear understanding of the evidence." He had previously refused to grant a motion in limine to exclude Exhibit 7 because it related specifically to the throttle cable and the repairs were "clearly defined."

Ford and Quality complain that the jury was allowed to consider the warranty repairs as evidence of a defective condition without a showing on the appellee's part of any substantial similarity. It was incumbent upon Massey, say the appellants, to present evidence to establish that the affected vehicles were used or maintained properly and that the cable assemblies in the code "41" vehicles stuck, bound, grabbed, or seized due to an internal fault. In addition, the appellants vigorously urge that of the various warranty repairs coded "41," only eight involved a cable replacement which they contend is what Larry Pipes considered to be the only recourse for a defective cable. The other Code classifications, they contend, were simply dissimilar and, therefore, irrelevant and prejudicial.

We agree with the trial judge that the SE-II warranty report was limited to a catalogue of repairs involving part number 9A758, the precise throttle cable assembly at issue in the present case for the model of 1986 Ford Bronco owned by the appellee. Moreover, the Code phrases in the report were specific and

summarized in a manner that was readily understandable. Furthermore, the SE-II report was analyzed at length by a Ford automotive engineer, Ken Waller, who was called as a witness by Massey, and then further analyzed by Larry Pipes. The jury was presented with thorough testimony on the exhibit relative to the repairs to the throttle cable assembly in question.

We turn to an Eleventh Circuit Court of Appeals decision for a case in point. *See Hessen* v. *Jaguar Cars, Inc.*, 915 F.2d 641 (11th Cir. 1990). In *Hessen,* the district court permitted the introduction of evidence regarding customer complaints of various leaks of fuel and fumes in the Jaguar XJ6 series in connection with a products liability action relating to a car fire. The plaintiff's expert did not point to a specific defect, but concluded that the fuel hose and connector were defective because they had a tendency to leak in various places. The Eleventh Circuit upheld the admission of the complaints, and noted that "the timing and circumstances of the incidents were similar enough that the admission of evidence concerning other occurrences was not an abuse of discretion." 915 F.2d at 650.

In *Four Corners Helicopters, Inc.* v. *Turbomeca, S.A., supra,* the Tenth Circuit Court of Appeals affirmed the decision of the district court which had allowed the introduction into evidence of sixteen reports of various repairs and a computer printout listing those reports which depicted similar incidents of screws backing out of an engine even though the similar incidents did not involve accidents or failures in flight which was the subject of that litigation. "The incidents," declared the court, "though not identical, were substantially similar and were therefore admissible to indicate the existence of a defect. They further met any relaxed requirement of similarity and were therefore admissible for all purposes offered by plaintiffs." 979 F.2d at 1440. The Tenth Circuit found no abuse of discretion by the district court.

The Arkansas cases cited by Ford and Quality to support abuse of discretion on substantial similarity questions are distinguishable on their facts. In *Westark Specialties, Inc.* v. *Stouffer Family, Ltd., supra,* the plaintiff attempted to prove substantial similarity of an insurance payment in connection with a previous lease without proving the content of the previous lease or the basis for the insurance company's payment. In *Turner* v. *Lamitina,*

*supra*, two traffic lights were the focus of the evidentiary issue, but they were never proved to be identical or to be operating in sequence or to come from the same central electric system. The dissimilarities in the proposed evidence in each case were striking.

We conclude that Exhibit 7 was relevant and that there was no showing of prejudice in the wake of the trial judge's decision not to exclude or strike the exhibit. The repairs involved were analyzed, discussed, and distinguished in great detail by the Ford engineer and Larry Pipes. We note, too, that the exhibit is clear and straightforward, especially in the summary by code categories, which minimizes the potential for juror confusion on the several repair classifications.

After the directed verdict on the negligence claim and the judge's decision not to strike Exhibit 7, trial counsel agreed not to refer to the exhibit again through testimony or by argument. Yet, the appellants made no effort to request a limiting instruction for the jury to disregard any part of the SE-II report. It is true that the appellants had the right to rely on their motion for mistrial and motion to strike. But in light of the trial judge's ruling that Exhibit 7 represented no prejudice, a limiting instruction on certain SE-II codes was an option available to the appellants which could have been utilized and was not.

We cannot say that under these circumstances where the exhibit dealt with repairs to the identical equipment at issue in the case — the throttle cable assembly — and where the repairs were clearly analyzed and described by witnesses, the trial judge abused his discretion in refusing to exclude it or to strike it.

Affirmed.

HAYES, J., dissents.

STEELE HAYS, Justice, dissenting. The existence of substantial evidence is a question of law. *Fuller* v. *Johnson*, 301 Ark. 14, 781 S.W.2d 463 (1989); *St. Louis S.W. Ry. Co.* v. *Braswell*, 198 Ark. 143, 127 S.W.2d 637 (1939). Hence, it is incumbent on the members of this court to satisfy ourselves that this verdict of seven million dollars is based on more than speculation and conjecture.

We have said substantial evidence is "competent" evidence:

Substantial evidence has been defined as "evidence

> that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture." Ford on Evidence, Vol. 4, § 549, page 2760. Substantial evidence has also been defined as "evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences." Wigmore on Evidence, Vol. IX, 3rd ed § 2494, footnote at page 300. *See also Tigue* v. *Caddo Minerals Co.*, 253 Ark. 1140, 491 S.W.2d 574; *Goza* v. *Central Ark. Dev. Council*, 254 Ark. 694, 496 S.W.2d 388.

*Kroger Co.* v. *Standard*, 283 Ark. 44, 48, 670 S.W.2d 803, 805 (1984).

Since this is a products liability case, it was necessary for the plaintiff-appellee to produce substantial evidence that this 1986 Ford Bronco had a defect which rendered it unreasonably dangerous and that the vehicle was manufactured or supplied in that condition. Ark. Code Ann. § 16-116-102 (1987). In my estimation the plaintiff-appellee has failed to produce evidence on either score which measures up to substantiality.

Appellee's case rested on the testimony of Mr. Larry Pipes, who could not say what the defect was, only that he found what he "considered to be a stiff point" in the cable connecting the acceleration pedal to the throttle. He made no attempt to explain or define the condition other than to refer to it as "a rough spot," "a stiff point" or "an internal fault" where the cable was "resistant to motion." He described it as something he could not "see," only "feel." These characterizations led him to conclude that the cable had "a problem." "Beyond that, I cannot tell you what specifically the problem is inside."

These observations were arrived at after he had disconnected the cable at both ends and tested it by manually pushing one end of the cable. Before he removed the cable he did not experience "a hang-up." I did not make a note of it, but I estimate that I pushed and released the gas pedal to check for a cable hang-up no less than a dozen and maybe two to three dozen times. Never once did

it hang." It is clear from the testimony that in normal operation the cable is never pushed. An expert for Ford testified that pushing the cable was comparable to pushing a rope and Mr. Pipes conceded that when the cable is attached it is either pulled by depressing the accelerator pedal, or pulled by the return springs when the pedal is released.

The testimony that the product was supplied in a defective condition is equally lacking. After the appellee had rested and appellant had moved for a directed verdict, appellee's expert was recalled to testify to his opinion that the vehicle was in a defective condition when manufactured and sold by Ford. The only basis he gave for that opinion was that the anticipated life of the cable equalled the life of the vehicle.

That, too, fails to conform to the requirements of substantial evidence when weighed in the light of certain facts which are not in dispute, i.e. this product had been in use for over four years and 51,000 miles. The testimony of appellee and two previous owners was that the accelerator had never once malfunctioned in that entire period of time. Thus we are asked to conclude that a "defect" which is unexplained, unidentified and effectually nonexistent between June of 1986 and August of 1990, while the product was constantly in use, was nevertheless present when the vehicle was first introduced to the market. For my part, I am unable to treat the expert testimony as substantial evidence. We have said the testimony of witnesses, "whether lay or expert, cannot be regarded as substantial if they are unable to give any reasonable basis for their opinion." *Ark. State Hwy. Comm'n* v. *Carruthers, Et Ux*, 246 Ark. 1035, 1039, 441 S.W.2d 84, 86 (1969). The testimony of experts is not substantial if they are unable to give "a *sound* and *reasonable factual basis* for their conclusions." *Ark. State Hwy. Comm'n* v. *Roberts*, 246 Ark. 1216, 1220, 441 S.W.2d 808, 811 (1969). "Because a witness testifies to a conclusion on his part does not necessarily mean that the evidence given by him is substantial, when he has not given a satisfactory explanation of how he arrived at the conclusion." *Ark. State Hwy. Comm'n, et al.* v. *Byers*, 221 Ark. 845, 851, 256 S.W.2d 738, 742 (1953).

To meet the test of substantial evidence, the opinion of an expert must have a reasonable and logical basis. *Wallace* v.

*Williams*, 263 Ark. 702, 567 S.W.2d 111 (1978). *And see* generally *Little* v. *George Feed & Supply Co.*, 233 Ark. 78, 342 S.W.2d 668 (1961); *Miller* v. *State*, 240 Ark. 340, 399 S.W.2d 298 (1966), and *Bartels* v. *Waire*, 289 Ark. 362, 712 S.W.2d 285 (1986).

The expert testimony in this case is aptly characterized in the *Carruthers* case, cited above, authored by Justice George Rose Smith. Although no fewer than ten witnesses gave opinions as to value equal to or above the amount of the verdict, this court reversed for lack of substantial evidence:

> Whether there is substantial evidence to support a verdict is not a question of fact, but one of law. Because a witness testifies as to a conclusion on his part does not necessarily mean that the evidence given by him is substantial, when he has not given a satisfactory explanation of how he arrived at the conclusion.

> \* \* \* \*

> "The difficulty is in differentiating between *any* evidence and substantial evidence . . . Must appellate judges close their eyes and their minds to the obvious fact that in a particular case the evidence, from its very nature, could not have been convincing, though it produced a given result? Shall we affirm that such evidence was *necessarily* substantial because it was favorably acted upon by the jury?"

*Carruthers* at 1041-1042.

In contrast to the requirements expressed in those and a good many other cases, the testimony in this case amounts to merely a conclusion, an unvarnished opinion that a defect exists, with no attempt to provide a sound, reasonable or logical basis for that conclusion. That, I respectfully submit, fails to rise to the level of substantial evidence and a judgment notwithstanding the verdict should have been ordered.