# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* JEANNINE A. PALAZZO IRREVOCABLE
TRUST.

---

JODY FEOLA, Trustee,

      Petitioner-Appellant,

v

GERALD M. MORELLO, JR., Trustee,

      Respondent-Appellee.

UNPUBLISHED
November 20, 2018

No. 340008
Wayne Probate Court
LC No. 16-816573-TV

---

Before: MURRAY, C.J., and METER and GLEICHER, JJ.

PER CURIAM.

Petitioner-appellant Jody Feola appeals as of right an order granting respondent-appellee Gerald Morello's motion for summary disposition in this case involving allegations that a trustee violated his fiduciary duties. We affirm.

Jeannine Palazzo died in April 2015, at the age of 86. In the mid-1990s, she had established an irrevocable life-insurance trust that was implemented by Morello, her attorney, but managed by an investment and financial-advice firm. The beneficiaries of the trust were Palazzo's nieces and nephews, and Feola, one of the nieces, served as family trustee for the trust. Morello served as the independent trustee. In 2014, the trust funds became in danger of depletion, and in 2015, before her death, Palazzo decided to "cash out" the trust, obtaining a cash-out value of $36,031.34. Because of this cashing out, the $500,000 death benefit was no longer available to be paid to the beneficiaries.

Feola believed that Morello had failed in his fiduciary duties as trustee and mishandled the life-insurance policy and the related trust funds. In 2016, she filed an "objection to accounting," alleging that Morello's failure to properly monitor the funds and provide progress reports and other information led to monetary loss for the beneficiaries of the trust. Morello filed a motion for summary disposition, arguing, among other things, that Palazzo's death having occurred shortly after cancellation of the insurance policy was an unfortunate turn of events, but that he was not the cause of any loss to the beneficiaries. He argued that even assuming that he should have obtained, and provided the beneficiaries with, further information about the

-1-

trajectory of the funds in the years before 2014, it was pure speculation regarding whether this would have changed anything. The trial court agreed with Morello and granted the motion for summary disposition.

We review de novo a trial court's ruling regarding a motion for summary disposition. *Dillard v Schlussel*, 308 Mich App 429, 444; 865 NW2d 648 (2014).

> Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the evidence submitted might permit inferences contrary to the facts as asserted by the movant. When entertaining a summary disposition motion under Subrule (C)(10), the court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing the evidence. [*Id.* at 444-445 (quotation marks and citations omitted).]

MCL 700.7803 states that a "trustee shall act as would a prudent person in dealing with the property of another, including following the standards of the Michigan prudent investor rule. If the trustee has special skills or is named trustee on the basis of representation of special skills or expertise, the trustee is under a duty to use those skills." MCL 700.7810 states that a "trustee shall take reasonable steps to take control of and protect the trust property." MCL 700.7901 states:

> (1) A violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust.

> (2) To remedy a breach of trust that has occurred or may occur, the court may do any of the following:

> (a) Compel the trustee to perform the trustee's duties.

> (b) Enjoin the trustee from committing a breach of trust.

> (c) Compel the trustee to redress a breach of trust by paying money, restoring property, or other means.

> (d) Order a trustee to account.

> (e) Appoint a special fiduciary to take possession of the trust property and administer the trust.

> (f) Suspend the trustee.

> (g) Remove the trustee as provided in section 7706.

> (h) Reduce or deny compensation to the trustee.

(i) Subject to section 7912, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds.

(j) Order any other appropriate relief.

Feola argues that she presented adequate evidence to create a question of fact regarding whether Morello failed to monitor the trust properly and "keep the beneficiaries informed." She argues that her own deposition testimony, as well as statements from an estate attorney and an accountant, established that Morello "did not fulfill his duties as a trustee and that his failures injured the beneficiaries." She argues, specifically, that "[i]t was Morello's failure to monitor the policy, keep the beneficiaries informed at all over approximately 18 years, and provide annual accountings that, combined with the nature of the policy, resulted in payment of premiums for 18 years and a minimal benefit when the policy was cashed in days before [Palazzo's] death." She contends that "lack of information about the cost and risk of the policy and its status as the years went by with no information from Morello" formed the basis of her claim.[1]

We cannot agree that Feola presented sufficient evidence to create a question of fact. Even assuming that Morello should have monitored the policy more closely over the years and provided more information to the beneficiaries, there is insufficient evidence regarding what would have been done differently if Morello had undertaken these actions. Feola *admitted* in her deposition that it was "speculation" that she and the other beneficiaries would have "had [Palazzo] stop it a long time ago" if they had received updates from Morello about the financial status of the funds. In a letter filed with the court, an accountant hired by Feola, Stewart Frank, stated that "[h]ad Mr. Morello prudently performed basic monitoring procedures on a regular annual basis and implemented obvious modifications, the policy lapse would have been avoided and the death benefit would have remained intact." However, Frank did not provide any specifics about what these "obvious modifications" were. At his deposition, Frank stated that "changes could have been made" to the policy and that "corrective action" needed to be taken before 2014. However, he admitted, "*I don't know what could have been done* because we don't know what we were dealing with." (Emphasis added.) When asked what would have happened if Morello had provided more information about the trust's issues, Frank said, "I can't answer it. *It's all speculation*." (Emphasis added.) He later stated that Morello should have renegotiated the premiums or looked for a better "deal" with another insurance carrier, but he provided no specifics about whether such renegotiations or searches would have been successful.

---

[1] Feola does not take issue with the decision to form the trust in the first place. She also does not dispute that she and Palazzo made the decision to cancel the policy after considering various other options, but she argues that Morello put them into a position of *needing* to cancel the policy because the trust had fallen into such bad financial shape.

-3-

We find that Feola's testimony and the evidence provided by Frank simply did not rise above the level of speculation. See, generally, *Genna v Jackson*, 286 Mich App 413, 418; 781 NW2d 124 (2009) (discussing causation and speculation).

The estate-planning attorney, Mary Lyneis, who filed an affidavit in support of Feola averred that Morello failed to keep the beneficiaries reasonably informed about the trust. In terms of causation, she stated that "Morello deprived the [beneficiaries] of the opportunity to take timely action to protect their interests, such as exploring with their aunt much earlier in the policy's existence other options for investing that $15,000.00 annual premium." She averred that it was "more likely than not that if the . . . beneficiaries were aware of the devaluation of the Trust assets years earlier, that they would have taken action and not allowed their aunt to continue to pay the $15,000 a year premiums." However, as stated in *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004), "[a] valid theory of causation . . . must be based on facts in evidence." An expert must have an evidentiary basis for his or her conclusions, and an expert's opinion is objectionable if it is "based on assumptions that d[o] not accord with the established facts." *Green v Jerome-Dunan Ford, Inc*, 195 Mich App 493, 498-499; 491 NW2d 243 (1992); see also *Badalamenti v Beaumont Hosp-Troy*, 237 Mich App 278, 286; 602 NW2d 854 (1999).

Lyneis did not provide a sufficient basis for her opinion that "if the . . . beneficiaries were aware of the devaluation of the Trust assets years earlier, . . . they would have taken action and not allowed their aunt to continue to pay the $15,000 a year premiums." First, she did not state *when* the trust assets became devalued to the point when the premiums would no longer be "worth it." And despite this lack of specificity regarding timing, she nevertheless averred that damages should be calculated according to the lost investment value of the *entire* amount of money paid for premiums during all the years the policy was in effect, even though testimony established that Palazzo willingly agreed to pay the premiums when initially establishing the trust. Second, Lyneis stated that the beneficiaries would have "not allowed their aunt to continue to pay the . . . premiums," but there is no basis from which to conclude that the beneficiaries could *force* Palazzo, who remained of sound mind until her death, to do anything. In addition, Lyneis did not explain the factual basis for her opinion that the beneficiaries would have objected to the paying of the premiums. Hypothetically, Lyneis could have engaged in a detailed financial analysis explaining at what point, and why, it no longer made financial sense to pay the premiums, but she did not do so. And again, Feola admitted that it was merely speculative that the policy would have been canceled if the family had received updates from Morello about the financial status of the funds.

The timing of the events in this case is truly unfortunate, but Feola simply did not provide sufficient evidentiary support regarding how the ultimate circumstances would have differed *even if* Morello had been more proactive in obtaining and distributing information about the trust. Accordingly, the trial court properly granted summary disposition to Morello. Given our resolution, we need not address Feola's argument that the trial court erred in discussing and analyzing MCR 2.116(C)(8).

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher