*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANAE PISCITELLO, Personal Representative of
the ESTATE OF SAMUEL PISCITELLO,

UNPUBLISHED
November 3, 2022

Plaintiff-Appellant,

v

No. 356861
Macomb Circuit Court
LC No. 2020-000649-NH

MICHAEL SHERBIN, D.O., MICHAEL SHERBIN,
D.O., PC, ARSENIO DELEON, M.D., and SELECT
SPECIALTY HOSPITAL-MACOMB COUNTY,
INC.,

Defendants-Appellees,

and

ALLIANCE HEALTH PROFESSIONALS, PLLC,

Defendant.

Before: RONAYNE KRAUSE, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff, Danae Piscitello, personal representative of the estate of Samuel Piscitello,
appeals as of right the trial court order granting summary disposition under MCR 2.116(C)(10)
(no genuine issue of material fact), in favor of defendants, Michael Sherbin, D.O.; Michael
Sherbin, D.O., PC (Dr. Sherbin's professional corporation); Arsenio DeLeon, M.D.; and Select
Specialty Hospital-Macomb County, Inc. (SSH). We affirm.

## I. BACKGROUND

This medical malpractice action arises from the death of the decedent, who was 68 years
old. The decedent had a myriad of health issues, which required multiple surgeries over the years.
In early September 2018, the decedent was admitted to Beaumont Hospital in Troy because of
breathing difficulties. The decedent underwent a tracheostomy and was placed on a ventilator. On
September 26, 2018, the decedent was transferred from Beaumont Hospital to SSH, which is "a

-1-

long-term acute care hospital." When the decedent arrived at SSH, he was no longer on a ventilator, but had a tracheostomy tube to assist him with breathing. Dr. DeLeon, who is board-certified in pulmonary disease, oversaw the decedent's care with respect to his tracheostomy tube. After the decedent showed improvement, Dr. DeLeon requested a consultation from an otolaryngologist concerning decannulation.

On October 26, 2018, Dr. Sherbin, a board-certified otolaryngologist, examined the decedent. Dr. Sherbin recommended the decedent be gradually decannulated. Specifically, Dr. Sherbin recommended the decedent's size-six tracheotomy tube be reduced to a size-four tracheostomy tube. Dr. Sherbin also recommended the size-four tube be capped and the decedent be monitored before the tube was removed. The decedent's tracheostomy tube was never reduced to a size four.

On the morning of October 29, 2018, a respiratory therapist discovered the decedent had removed his tracheostomy tube. The therapist noted the decedent's vitals were stable and the decedent was able to "oxygenate" on his own. The therapist alerted Dr. DeLeon. After Dr. DeLeon examined the decedent, he decided not to recannulate him. Dr. DeLeon did not request an evaluation from an otolaryngologist. Rather, Dr. DeLeon decided it was appropriate to monitor the decedent, whose vital signs and oxygen saturation levels remained stable throughout the day and early evening. However, late that night, the decedent was found unresponsive in his room and was unable to be resuscitated. An autopsy was not performed.

In February 2020, plaintiff filed suit. Plaintiff alleged Dr. Sherbin's recommendation to decannulate the decedent amounted to malpractice because the decedent had a narrowed airway. Plaintiff further alleged Dr. DeLeon committed malpractice by failing to recannulate the decedent or by failing to immediately obtain a consultation from an otolaryngologist on October 29, 2018. Plaintiff alleged SSH and Dr. Sherbin's professional corporation were liable under the theory of vicarious liability.[1] Plaintiff relied on the expert opinions of Dr. John Bogdasarian, who is board-certified in otolaryngology, and Dr. James Hershon, who is board-certified in pulmonary disease, who opined that the decedent died as a result of a pulmonary obstruction, which was caused by the decedent's narrowed airway.

Dr. DeLeon, Dr. Sabin, and Dr. Sabin's professional corporation moved for summary disposition. In relevant part, they argued the evidence did not support that the decedent died as a result of a pulmonary obstruction. Dr. DeLeon, Dr. Sabin, and Dr. Sabin's professional corporation also argued that the testimony of Dr. Bogdasarian and Dr. Hershon was unreliable because their causation opinions conflicted with Dr. Sherbin's personal observations of the decedent's throat and vocal cords on October 26, 2018. SSH concurred with the relief sought in the motions for summary disposition and argued the trial court should also grant summary disposition in favor of SSH. After hearing oral argument, the trial court granted summary disposition in favor of Dr. Sherbin, Dr. Sherbin's professional corporation, Dr. DeLeon, and SSH. In doing so, the trial court concluded that Dr. Bogdasarian's and Dr. DeLeon's opinions conflicted

---

[1] Plaintiff also alleged defendant, Alliance Health Professionals, PLLC, was vicariously liable for Dr. DeLeon's malpractice. However, the parties stipulated to dismiss plaintiff's claim against Alliance Health Professionals, PLLC, without prejudice during the proceedings.

with Dr. Sherbin's personal observations of the decedent's throat and vocal cords. The trial court concluded that plaintiff was unable to establish a genuine issue of material fact as to causation. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's "decision to exclude evidence for an abuse of discretion." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "A trial court abuses its discretion when its decision falls outside the range of principled and reasonable outcomes." *Crego v Edward W Sparrow Hosp Ass'n*, 327 Mich App 525, 531; 937 NW2d 380 (2019). A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

Courts may not assess credibility or make factual findings when deciding a motion for summary disposition under MCR 2.116(C)(10). *White v Taylor Distrib Co, Inc*, 482 Mich 136, 142-143; 753 NW2d 591 (2008).

## III. ANALYSIS

Plaintiff argues that the trial court improperly precluded Dr. Bogdasarian's and Dr. Hershon's expert testimony and erred by granting summary disposition in favor of Dr. Sherbin and Dr. DeLeon. We disagree.

A "plaintiff in a medical malpractice action bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by [the] defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Cox v Bd of Hosp Managers for the City of Flint*, 467 Mich 1, 10; 651 NW2d 356 (2002) (quotation marks and citation omitted). Failure to establish any one of these four elements is fatal to a plaintiff's medical malpractice suit. *Id*.

"Proof of causation requires both cause in fact and legal, or proximate, cause." *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001). "As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). "Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct. On the other hand, legal cause or proximate cause normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Haliw*, 464 Mich at 310 (quotation marks and citations omitted).

Expert testimony is required to demonstrate "a causal link between a defendant's professional negligence and the plaintiff's injury." *Estate of Taylor v Univ Physician Group*, 329 Mich App 268, 278; 941 NW2d 672 (2019). Before expert testimony is admitted, the trial court is required by MRE 702 "to ensure that each aspect of an expert witness's proffered testimony . . . is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 779-783; 685 NW2d 391 (2004). MRE 702 states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Elher*, 499 Mich at 23 (quotation marks and citation omitted). "[T]he causation theory must demonstrate some basis in established fact." *Ykimoff v WA Foote Mem Hosp*, 285 Mich App 80, 87-88; 776 NW2d 114 (2009).

Additionally, as part of its "gatekeeper" role, a trial court must consider the factors listed in MCL 600.2955(1), *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067, 1068; 729 NW2d 221 (2007), which states:

> In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
>
> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.
>
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
>
> (d) The known or potential error rate of the opinion and its basis.
>
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

Importantly, "all [of] the factors in MCL 600.2955 may not be relevant in every case." *Elher*, 499 Mich at 27. Indeed, scientific testing and replication may "not fit the type of opinion at issue" in certain cases. *Id*.

Dr. Bogdasarian and Dr. Hershon opined that the decedent died as a result of an obstructed airway. In so concluding, Dr. Bogdasarian and Dr. Hershon relied on Dr. Sherbin's October 26, 2018 examination note to support the decedent's airway only opened three to four millimeters. On October 26, 2018, Dr. Sherbin performed a fiberoptic laryngoscopy on the decedent and observed his vocal cords and throat. After Dr. Sherbin's examination, he recorded his observations and recommendations in a note. In relevant part, the note stated: "Paresis of the right cord. Small glottic opening, three to four millimeters." At Dr. Sherbin's deposition, he explained the decedent's vocal cords "open[ed] fully," but the right vocal cord had paresis, which meant it opened slowly. According to Dr. Sherbin, he was able to observe a three to four millimeter "glottis chink after the cords were closed. . . ."[2] Dr. Sherbin did not detect glottic stenosis or vocal cord paralysis. Based on Dr. Sherbin's observations, he recommended the decedent be gradually decannulated.

This Court has previously explained that an expert's opinion is objectionable when "based on assumptions that [do] not accord with the established facts." *Green v Jerome-Duncan Ford, Inc*, 195 Mich App 493, 499; 491 NW2d 243 (1992). In *Thornhill v Detroit*, 142 Mich App 656, 657-658; 369 NW2d 871 (1985),[3] the plaintiff alleged that the decedent died as a result of an emergency medical service team failing to keep the decedent's throat clear when transporting him to the hospital. The plaintiff's proposed expert opined the decedent likely "died after aspirating his vomitus" while in the team's care. *Id*. at 658. This opinion was based on the expert's belief that the decedent began frothing at the mouth after the team arrived. *Id*. at 658-661. However, the only eyewitnesses indicated the frothing began before the team's arrival. *Id*. at 660. Because "the facts clearly show[ed] that the frothing commenced prior to the team's arrival," this Court affirmed the trial court's exclusion of the proposed expert testimony. *Id*. at 661.

In *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 281; 602 NW2d 854 (1999), the plaintiff alleged that the defendant cardiologist negligently failed to diagnose and properly treat the plaintiff's cardiogenic shock. The defendant asserted the plaintiff did not suffer

---

[2] Dr. Sherbin testified that "a glottis chink refers to . . . the opening of the airway at the vocal cord level . . . ."

[3] Although cases decided by this Court before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), we can consider them as persuasive authority, *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

from cardiogenic shock; rather, the defendant alleged the plaintiff suffered from a severe adverse reaction to a medication administered in the emergency department. *Id*. at 282.

The plaintiff's expert testified that cardiogenic shock involves "significant damage to the heart's pumping action," and "three definitive hemodynamic measurements . . . are required" to diagnose cariogenic shock. *Id*. at 286-287 (emphasis omitted). The expert acknowledged the plaintiff's objective hemodynamic measurements did not support a finding of cardiogenic shock, but opined that the plaintiff suffered from cardiogenic shock based on his skepticism of an echocardiogram performed by another physician during the plaintiff's treatment. *Id*. at 287. However, the physician who performed the echocardiogram testified that he observed the pumping function of the plaintiff's heart while the echocardiogram was in process and determined the plaintiff's ventricular function was essentially normal, "which would rule out a diagnosis of cardiogenic shock." *Id*. at 287-288.

This Court held that the opinion offered by the plaintiff's expert regarding the plaintiff's alleged cardiogenic shock was not supported by legally sufficient evidence. *Id*. at 288-289. Specifically, this Court explained, "an expert's opinion is objectionable where it is based on assumptions that are not in accord with the established facts." *Id*. at 286. "This is true where an expert witness' testimony is inconsistent with the testimony of a witness who personally observed an event in question, and the expert is unable to reconcile his inconsistent testimony other than by disparaging the witness' power of observation." *Id*. The *Badalamenti* Court noted that the plaintiff's expert conceded "on the basis of the information in the record, a competent cardiologist might logically conclude that [the] plaintiff did not have cardiogenic shock," and an adverse reaction to the medication administered by the emergency department could not be ruled out. *Id*. at 289. Because the plaintiff's expert relied only on his disparagement of findings reached by the physician who performed the plaintiff's echocardiogram, this Court determined that the expert's opinion was not sufficient to establish that the plaintiff actually suffered from cardiogenic shock, which was essential to the plaintiff's cause of action. *Id*.

This case is analogous to *Thornhill* and *Badalamenti* because Dr. Bogdasarian's and Dr. Hershon's opinions are contradicted by established facts, i.e., Dr. Sherbin's personal observations that the decedent's vocal cords opened fully and the decedent was not suffering from epiglottic stenosis or vocal cord paralysis. Indeed, Dr. Bogdasarian acknowledged he could not challenge Dr. Sherbin's personal observations. Importantly, an autopsy was not performed, and Dr. Sherbin was the only medical professional who viewed the decedent's throat and vocal cords in the days before his death. Both Dr. Bogdasarian and Dr. Hershon acknowledged that the decedent could have died from other causes given his poor health. Because Dr. Bogdasarian's and Dr. Hershon's opinions concerning the decedent's cause of death were contradicted by established facts, their testimony was unreliable and inadmissible. The trial court therefore did not abuse its discretion by impliedly concluding that it was proper to exclude their causation testimony.

The next question becomes whether Dr. Sherbin and Dr. DeLeon were entitled to summary disposition as a matter of law under MCR 2.116(C)(10) on the ground that plaintiff failed to establish a genuine issue of material fact. We conclude that plaintiff could not create a genuine issue of material fact that Dr. Sherbin's and Dr. DeLeon's actions or inactions caused the decedent's death without the expert testimony of Dr. Bogdasarian and Dr. Hershon. Indeed, expert testimony is necessary to "demonstrate[e] a causal link between a defendant's professional

negligence and the plaintiff's injury." *Estate of Taylor*, 329 Mich App at 278. Failing to present admissible evidence to support causation was fatal to plaintiff's claims, and summary disposition in favor of Dr. Sherbin and Dr. DeLeon was therefore proper. See *Cox*, 467 Mich at 10. Because plaintiff's medical malpractice claims against Dr. Sherbin and Dr. DeLeon failed, it necessarily follows that plaintiff's vicarious liability claims against Dr. Sherbin's professional corporation and SSH also failed. See *id*. at 10-11. Given this holding, we need not consider the remainder of the parties' arguments on appeal. See *Attorney General v Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005) (this Court need not decide moot issues).

Affirmed.

/s/ Kathleen Jansen
/s/ Christopher M. Murray