*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TPM, a legally incapacitated person, by Next Friend
LINDA DOZIER, also known as LINDA SIMPSON,

        Plaintiff-Appellant,

v

BOARD OF HOSPITAL MANAGERS FOR THE
CITY OF FLINT, doing business as HURLEY
MEDICAL CENTER,

        Defendant-Appellee,

and

KENNETH L. WILSON, M.D., GENESYS
REGIONAL MEDICAL CENTER, WILLIAM R.
SHEPARD, D.O., LIANNE E. MOORE, D.O., also
known as LIANNE E. GRAF, D.O., MCLAREN
FLINT, and GJON DUSHAJ, M.D.,

        Defendants.

UNPUBLISHED
December 18, 2025
9:18 AM

No.   366255
Genesee Circuit Court
LC No.   18-111367-NH

Before:  K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

      In this interlocutory appeal,[1] plaintiff appeals by leave granted the trial court's order following a *Daubert*[2] hearing, which excluded the testimony of plaintiff's standard-of-care expert, nurse Elisabeth Ridgely, R.N., and dismissed plaintiff's claim for nursing negligence against

---

[1] *TPM v Bd of Hosp Managers for the City of Flint*, unpublished order of the Court of Appeals, entered November 9, 2023 (Docket No. 366255).

[2] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

defendant Board of Hospital Managers for the City of Flint, doing business as Hurley Medical Center ("Hurley"). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This medical-malpractice action arises from a series of surgeries and hospital visits that plaintiff underwent in March 2016. Plaintiff has a significant history of Crohn's disease and had a colostomy performed when she was young. On March 3, 2016, plaintiff was admitted to Hurley for colostomy reversal surgery and remained there postoperation to monitor her recovery. After a few days, plaintiff began to experience nausea, vomiting, pain, and difficulty eating. Hurley discharged plaintiff on March 17, 2016, noting that she was in stable condition.

Plaintiff attempted to seek care from defendant Genesys Regional Medical Center ("Genesys") in the two days following her discharge from Hurley. On March 19, 2016, plaintiff received a computerized tomography ("CT") scan at Genesys that indicated the presence of fluid in plaintiff's pelvis. Plaintiff was transferred by ambulance to the Hurley emergency room ("ER") the same evening. Plaintiff alleged that after arriving at Hurley, she was placed in a waiting room where she did not receive timely assistance and fainted. Plaintiff's mother then drove her to McLaren Flint ("McLaren"), where she underwent another CT scan that revealed air and fluid in her abdomen.

On March 20, 2016, plaintiff was again transferred by ambulance to Hurley, where the medical staff discovered that plaintiff had an anastomosis leak that required surgery. Plaintiff was placed in the intensive care unit postsurgery and further diagnosed with acute renal failure, kidney failure, and acidosis. Plaintiff required continued treatment as a result of these diagnoses, including a feeding tube, a catheter line to administer medication, and regular dialysis treatments.

In August 2018, plaintiff initiated this medical-malpractice lawsuit against Hurley and several other defendants. Plaintiff's claims included one count of medical negligence against the nursing staff that attended her at Hurley, alleging that they breached the standard of care by failing to ensure plaintiff's triage, admission, treatment, and discharge were timely and proper. To support her nursing-negligence claim, plaintiff identified Ridgely as a standard-of-care expert. Ridgely opined that the nurses at Hurley breached the applicable standards of care by failing to question plaintiff's discharge on March 17, 2016, and failing to properly attend to plaintiff in the ER on March 19, 2016.

In March 2022, Hurley filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that Ridgely's expert testimony should be precluded under MRE 702 and MCL 600.2955 because it was unreliable and unsupported by medical literature. Hurley further asserted that plaintiff's nursing-negligence claim should be dismissed because Ridgely was not qualified to provide expert testimony. Plaintiff responded, producing literature that purportedly supported Ridgely's standard-of-care testimony. The trial court then ordered a *Daubert* hearing to determine the admissibility of Ridgely's expert opinions. Following the hearing and supplemental briefing by the parties, the trial court struck Ridgely's expert testimony and dismissed plaintiff's nursing-negligence claim. Plaintiff filed a motion for reconsideration, which the trial court also denied. This appeal ensued.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). "The admission or exclusion of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion." *Id*. This Court reviews questions of law underlying a trial court's evidentiary rulings, such as the interpretation of statutes and court rules, de novo. *Id*.

## III. ANALYSIS

Plaintiff argues that the trial court abused its discretion by striking Ridgely as plaintiff's standard-of-care expert witness. We disagree.

## A. PLAINTIFF'S DISCHARGE

Plaintiff first contends that the trial court abused its discretion by striking Ridgely's standard-of-care testimony regarding plaintiff's discharge on March 17, 2016, because her opinion was adequately supported by medical literature.

"A plaintiff in a medical malpractice action bears the burden of establishing (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024) (quotation marks and citations omitted). "Generally, expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Elher*, 499 Mich at 21 (quotation marks and citation omitted).

The proponent of the evidence "bears the burden of demonstrating the relevance and admissibility of the expert's opinions" by establishing that the expert is qualified under MRE 702 and MCL 600.2955. *Danhoff*, 513 Mich at 442. Based on this showing, a trial court must "make a preliminary assessment of whether the proposed expert's testimony is scientifically valid and whether the reasoning and methodology upon which the expert bases their testimony can be applied to the facts in the case," otherwise known as the trial court's "gatekeeping function." *Id*. at 444.

MRE 702 incorporates the reliability standards set forth by the United States Supreme Court in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). See *Elher*, 499 Mich at 22. "Under *Daubert*, the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id*. at 22-23 (quotation marks and citations omitted). MRE 702 provides:[3]

---

[3] MRE 702 was amended, effective May 1, 2024. This opinion relies on the version of MRE 702 that was in effect during the trial court proceedings.

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Elher*, 499 Mich at 23 (quotation marks and citation omitted). Further, while a lack of supporting literature is not dispositive in determining the admissibility of expert-witness testimony, it is an "important factor." *Id*.

"MCL 600.2955(1) requires the court to determine whether the expert's opinion is reliable and will assist the trier of fact by examining the opinion and its basis, including the facts, technique, methodology, and reasoning relied on by the expert, and by considering seven factors[.]" *Id*. These factors include:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation. [MCL 600.2955(1)(a) through (g).]

In this case, Ridgely testified that plaintiff should not have been discharged from Hurley on March 17, 2016. She emphasized that because nurses, as opposed to physicians, are at the bedside of their patients "day in and day out for 12 hours at a time," it is a nurse's job to advocate for a patient's symptoms to the doctors. Ridgely opined that the Hurley nurses breached the standard of care by failing to question and advocate against plaintiff's discharge given the symptoms plaintiff presented with, including nausea, vomiting, and pain following an abdominal

surgery.  In forming this opinion, Ridgely stated that she considered deposition testimony, plaintiff's medical records, and her own education, training, and background.  Ridgely also provided several examples of medical literature that purportedly supported her opinions.  See American Nurses Association, *Code of Ethics for Nurses with Interpretive Statements* (Silver Spring: Nursesbooks.org, 2015); Lucatorto et al., *Registered Nurses as Caregivers: Influencing the System as Patient Advocates*, OJIN: The Online Journal of Issues in Nursing, Vol. 21, No. 3, Manuscript 2 (2016); Okuyama et al., *Speaking Up for Patient Safety by Hospital-Based Health Care Professionals: A Literature Review*, BMC Health Services Research, Vol. 14, No. 61 (2014).

The trial court concluded that Ridgely's expert opinion was "too general and too unconnected to accept."  It stated the language in the American Nurses Association ("ANA") Code of Ethics, "can hardly be supportive of Nurse Ridgely's contention that this enunciates a standard of care and corresponding breach on discharging a patient," and that the words "discharge" and "doctor" did not appear in any of the ANA provisions.  The court emphasized that Ridgely's enunciated standard of care, when "[s]tripped to its basics, . . . would call for a challenge to the doctor's discharge order by the nurses," and that "nurses do not discharge patients from the hospital setting; doctors do."  We agree with the trial court's determination and analysis.

Ridgely's cited literature does not explicitly discuss or illuminate a standard of care as it relates to discharging patients.  In support of her opinion, Ridgely offered the ANA Code of Ethics, which states, "The nurse promotes, advocates for, and protects the rights, health, and safety of the patient," and "takes action consistent with the obligation to provide optimal patient care."  *Code of Ethics*, Provisions 3 and 4.  She also relied on a peer-reviewed article, explaining that "[n]urses serve as advocates for patients when they utilize their clinical knowledge to provide care rather than perform care as task-based orders to be completed."  *Registered Nurses as Caregivers*, Manuscript 2.  Finally, Ridgely presented a peer-reviewed article stating that "health care professionals voicing their concerns can be a good opportunity to prevent an adverse event," *Speaking Up for Patient Safety*, p 4, and that "[h]esitancy to speak up is one of the factors that may contribute to communication errors and/or adverse events," *id*. at 7.

These authorities do not provide a workable standard of care as it relates to whether the Hurley nurses breached their duty by allowing plaintiff's discharge.  At most, they provide a general discussion about the importance of patient advocacy.  The trial court did not abuse its discretion by recognizing that the general propositions on which Ridgely relied—that nurses should advocate for their patients and provide optimal care—presented too general a standard to be helpful to a jury in assessing whether plaintiff was negligently discharged.

The reliability of Ridgely's opinion is further undermined by the fact that nurses are not ultimately responsible for the discharge of a patient.  While Ridgely testified that nurses may influence whether a patient is discharged, she also acknowledged that a physician or mid-level provider is ultimately responsible for issuing a discharge order.  Though plaintiff cites *Hall v Bartlett*, unpublished per curiam opinion of the Court of Appeals, issued March 29, 2011 (Docket

Nos. 288293 and 290147), p 6,[4] for the proposition that a supervisory nurse can "possibly 'trump' the doctor's orders," the facts in that case were related to a specific chain-of-command procedure that the defendant hospital had in place. Other than argument by plaintiff's counsel regarding his understanding of chain-of-command operation, Ridgely provided no testimony that Hurley had a chain-of-command structure that would allow a nurse to "trump" a doctor's discharge order.

We recognize our Supreme Court's caution against "[t]reating a lack of supportive medical literature as dispositive that the expert's opinions are unreliable and, therefore, inadmissible . . . ." *Danhoff*, 513 Mich at 455. However, aside from Ridgely's attenuated medical literature, the only support for her opinion rests on her review of the evidence based on her own education, training, and background. It is well settled that "[u]nder MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Elher*, 499 Mich at 23 (quotation marks and citation omitted). The trial court did not abuse its discretion by striking Ridgely's standard-of-care testimony with regard to plaintiff's March 17, 2016 discharge.

## B. PLAINTIFF'S EMERGENCY ROOM TREATMENT

Plaintiff also argues that the trial court abused its discretion by striking Ridgely's standard-of-care opinion regarding plaintiff's treatment in the ER on March 19, 2016, because Ridgely's opinion was supported by facts in evidence.

MRE 703 addresses the appropriate bases on which an expert may form his or her testimony, and requires that an expert opinion be based on facts and data in evidence. During the trial court proceedings, MRE 703 provided:[5]

> The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence hereafter.

This Court has explained that "[a]n expert witness need not rule out all alternative causes of the effect in question, but he must have an evidentiary basis for his own conclusions," and that an expert opinion is objectionable where "it [is] based on assumptions that d[o] not accord with the established facts." *Green v Jerome-Duncan Ford, Inc*, 195 Mich App 493, 498-499; 491 NW2d 243 (1992).

Ridgely testified that the Hurley nurses breached the standard of care by failing to monitor and attend to plaintiff in the ER on March 19, 2016. Although there was some argument regarding whether Ridgely received and reviewed all of the records necessary to form her opinion, by the

---

[4] "Although unpublished decisions of this Court are not binding, the reasoning in an unpublished decision may be adopted as persuasive." *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, 345 Mich App 649, 666; 9 NW3d 104 (2023) (citations omitted).

[5] MRE 703 was also amended, effective May 1, 2024. This opinion relies on the version of MRE 703 that was in effect during the trial court proceedings.

time the trial court held the *Daubert* hearing, Ridgely had reviewed the pertinent medical records and deposition testimony and stated that her opinion was unchanged. She testified that plaintiff was triaged as a "level two" patient, which indicated that plaintiff would require a significant amount of resources and need to be seen as quickly as possible. Ridgely indicated that nurses have a duty to continually monitor and evaluate a level-two triage patient that is awaiting treatment. Ridgely also noted evidence that plaintiff fainted in the waiting room and did not receive any subsequent assistance, which indicated that the nurses breached the standard of care.

Hurley contended, and the trial court agreed, that Ridgely's account of the March 19, 2016 events was unsupported by the record. The trial court noted that it "read the entirety of the deposition transcripts of all three witnesses," and that Ridgely's "citation to that record suffers from being inaccurate to insufficient." We agree that plaintiff's opinion does not accord with the established facts and was properly excluded under MRE 703.

While Ridgely testified that the Hurley nurses breached the standard of care because plaintiff "was placed in the waiting area and there was no further assessment of what was happening with her," this was clearly contradicted by medical records that plaintiff was assessed during her stay at the ER. Records from March 19, 2016, indicate that a "vitals reassessment" of plaintiff was performed an hour after she arrived at the ER. Ridgely also based her opinion on evidence that plaintiff fainted in the ER waiting room and did not receive subsequent assistance. However, Ridgely conceded that there was "no documentation in the medical records whatsoever that [plaintiff] had this [fainting] episode." Instead, her assertion was based on a correspondence sent by Dr. Kenneth Wilson to Dr. Franz Jaggi that plaintiff "became syncopal and fell to the floor, and no assistance was offered by [Hurley] staff." However, this correspondence was not based on Dr. Wilson's personal knowledge of plaintiff's presentation at the ER, but statements by plaintiff's mother. Further, while Dr. Wilson testified that Dr. Jaggi reported reviewing a video of plaintiff at the ER, Dr. Jaggi clarified during his deposition that he did not see any such video.

While plaintiff frames the trial court's decision to exclude Ridgely's testimony as an impermissible credibility determination, we agree with defendant that the trial court acted within its discretion by determining that Ridgely's opinion lacked a sufficient evidentiary basis. The trial court reviewed the entirety of the deposition transcripts presented, and it did not abuse its discretion in determining that Ridgely's standard-of-care testimony was contrary to established facts.

## IV. CONCLUSION

The trial court did not abuse its discretion when it struck Ridgely as plaintiff's standard-of-care expert because her testimony regarding plaintiff's treatment at Hurley on March 17, 2016, and March 19, 2016, was unreliable and not based on facts in evidence.

Affirmed. Having prevailed on appeal, defendant may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Matthew S. Ackerman